Nos. 23-2144, -2145, -2146, -2147, -2414, -2415, -2442, and -2443

IN THE

# United States Court of Appeals for the Federal Circuit

---

BRIGHT DATA LTD.,

Appellant,

v.

CODE200, UAB, TESO LT, UAB, METACLUSTER LT, UAB, OXYSALES, UAB, THE DATA COMPANY TECHNOLOGIES INC., MAJOR DATA UAB, CORETECH LT, UAB,

Appellees.

---

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board, *Inter Partes* Review Nos. IPR2022-00103, IPR2022-00135, IPR2022-00138, IPR2022-00353, IPR2022-00915, IPR2022-00916, IPR2021-01492, IPR2022-00861, IPR2021-01493, and IPR2022-00862

---

## BRIEF FOR APPELLEES

---

Daniel S. Leventhal
NORTON ROSE FULBRIGHT US LLP
1301 McKinney St., Suite 5100
Houston, TX 77010
daniel.leventhal@nortonrosefulbright.com

Mark T. Garrett
Stephanie N. DeBrow
NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Blvd., Suite 1100
Austin, TX 78701
mark.garrett@nortonrosefulbright.com
stephanie.debrow@nortonrosefulbright.com

*Counsel for Appellees Code200, UAB, Teso LT, UAB, metacluster lt, UAB, Oxysales, UAB, and coretech lt, UAB*

Michael N. Rader
WOLF GREENFIELD & SACKS, PC
605 Third Avenue
New York, NY 10158
mrader@wolfgreenfield.com

Adam Wichman
WOLF GREENFIELD & SACKS, PC
600 Atlantic Avenue
Boston, MA 02210
awichman@wolfgreenfield.com

*Counsel for Appellee The Data Company Technologies Inc.*

May 1, 2024            *Additional Counsel Listed on Following Page*

Jonathan S. Franklin
NORTON ROSE FULBRIGHT US LLP
799 9th St. N.W., Suite 1000
Washington, D.C. 20001
jonathan.franklin@nortonrosefulbright.com

*Counsel for Appellees Code200, UAB, Teso LT, UAB, metacluster lt, UAB, Oxysales, UAB, and coretech lt, UAB*

JASON R. BARTLETT
WENSHENG MA
MASCHOFF BRENNAN
450 Sansome Street, Suite 1005
San Francisco, CA 94111
(418) 738-6334

*Counsel for Appellee Major Data UAB*

# PATENT CLAIMS AT ISSUE

## U.S. Patent No. 11,044,342

1.  A method for use with a web server that responds to Hypertext Transfer Protocol (HTTP) requests and stores a first content that is identified by a first Uniform Resource Locator (URL), the method by a first client device comprising:

> executing, by the first client device, a web browser application or an email application;

> establishing a Transmission Control Protocol (TCP) connection with a second server;

> receiving, the first content from the web server over an Internet; and

> sending the received first content, to the second server over the established TCP connection, in response to the receiving of the first URL.

## U.S. Patent No. 10,257,319

1.  A method for use with a first client device, for use with a first server that comprises a web server that is a Hypertext Transfer Protocol (HTTP) server that responds to HTTP requests, the first server stores a first content identified by a first content identifier, and for use with a second server, the method by the first client device comprising:

> receiving, from the second server, the first content identifier;

> sending, to the first server over the Internet, a Hypertext Transfer Protocol (HTTP) request that comprises the first content identifier;

> receiving, the first content from the first server over the Internet in response to the sending of the first content identifier; and

> sending, the first content by the first client device to the second server, in response to the receiving of the first content identifier.

## U.S. Patent No. 10,484,510

1.  A method for use with a web server that responds to Hypertext Transfer Protocol (HTTP) requests and stores a first content identified by a first content identifier, the method by a first client device comprising:

> establishing a Transmission Control Protocol (TCP) connection with a second server;

> sending, to the web server over an Internet, the first content identifier;

> receiving, the first content from the web server over the Internet in response to the sending of the first content identifier; and

> sending the received first content, to the second server over the established TCP connection, in response to the receiving of the first content identifier.

## U.S. Patent No. 11,044,344

1.  A method for use with a web server that stores a first web-page identified by a first Uniform Resource Locator (URL), the method by a first client device comprising:

> communicating with a second server;

> receiving, from the second server, the first URL;

> sending, to the web server over the Internet, the first URL;

> receiving, the first web-page from the web server over the Internet in response to the sending of the first URL; and

> sending the received first web-page to the second server, in response to the receiving of the first URL.

**U.S. Patent No. 11,044,344**

24.  A method for use with a web server that stores a first web-page identified by a first Uniform Resource Locator (URL), and for use with an additional web-server that stores a second web-page identified by a second URL, the method by a first device comprising:

receiving, from the second server, the first URL;

sending, to the web server over the Internet, the first URL;

receiving, the first web-page from the web server over the Internet in response to the sending of the first URL;

sending the received first web-page to the second server, in response to the receiving of the first URL;

receiving, from the second server, the second URL;

sending, to the additional web-server over the Internet in response to the receiving of the second URL, the second URL; and

receiving the second web-page from the additional web-server over the Internet in response to the sending.

# CERTIFICATE OF INTEREST

**Case Number:** 23-2144, 23-2145, 23-2146, 23-2147, 23-2414, 23-2415, 23-2442, 23-2443

**Short Case Caption:** Bright Data Ltd. v. Code200, UAB

**Filing Party/Entity:** Code200, UAB; Teso LT, UAB; metacluster lt, UAB; Oxysales, UAB; and coretech lt, UAB

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: <u>May 1, 2024</u>      Signature: <u>/s/ *Jonathan S. Franklin*</u>

Name:      <u>Jonathan S. Franklin</u>

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☒ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Code200, UAB | | Code200, UAB is a wholly owned subsidiary of coretech lt, UAB. |
| Teso LT, UAB | | Teso LT, UAB is now known as oxylabs, UAB. oxylabs, UAB is wholly owned by coretech lt, UAB. |

| | | |
|---|---|---|
| metacluster lt, UAB | | In 2022, metacluster lt, UAB was merged into Teso LT, UAB, which is now known as oxylabs, UAB.  oxylabs, UAB is wholly owned by coretech lt, UAB. |
| Oxysales, UAB | | In 2022, Oxysales UAB was merged into Teso LT, UAB, which is now known as oxylabs, UAB. oxylabs, UAB is wholly owned by coretech lt, UAB. |
| coretech lt, UAB | | No parent corporations, and no publicly held corporation owns ten percent (10%) or more of its stock. |

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

Norton Rose Fulbright US LLP:  James G. Warriner

Charhon Callahan Robson & Garza, PLLC:  Craig Tolliver, George Scott, and John C. Heuton

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☒ Yes (file separate notice; see below)    ☐ No    ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☒ None/Not Applicable    ☐ Additional pages attached

# CERTIFICATE OF INTEREST

**Case Number:**  23-2144, 23-2145, 23-2146, 23-2147, 23-2414, 23-2415, 23-2442, 23-2443

**Short Case Caption:**  Bright Data Ltd. v. Code200, UAB

**Filing Party/Entity:**  The Data Company Technologies Inc.

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.


Date: <u>May 1, 2024</u>          Signature:  <u>/s/  Michael N. Rader</u>

                               Name:      <u>Michael N. Rader</u>

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities.  Do not list the real parties if they are the same as the entities.<br><br>☐ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☒ None/Not Applicable |
| The Data Company Technologies Inc. | Without conceding that the following parties are in fact real parties-in-interest, appellee The Data Company Technologies Inc. prophylactically identified the following entities as real parties-in-interest during the proceedings before the PTAB: | |

|  | Avantis Team Technologies Ltd.

Cytronix Ltd. |  |

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

Gregory S. Nieberg

Marie A. McKiernan

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☒ Yes (file separate notice; see below)   ☐ No   ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☒ None/Not Applicable   ☐ Additional pages attached

# CERTIFICATE OF INTEREST

**Case Number:** 23-2144, 23-2145, 23-2146, 23-2147, 23-2414, 23-2415, 23-2442, 23-2443

**Short Case Caption:** Bright Data Ltd. v. Code200, UAB

**Filing Party/Entity:** Major Data UAB

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.


Date: <u>May 1, 2024</u>          Signature: <u>/s/  Jason R. Bartlett</u>

                              Name:    <u>Jason R. Bartlett</u>

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities.  Do not list the real parties if they are the same as the entities.  ⊠ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ⊠ None/Not Applicable |
| Major Data UAB | | |

| **4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4). |
|---|
| Liang Huang of MASCHOFF BRENNAN |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☒ Yes (file separate notice; see below)   ☐ No   ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☒ None/Not Applicable   ☐ Additional pages attached

# TABLE OF CONTENTS

Page

PATENT CLAIMS AT ISSUE.................................................................i

CERTIFICATES OF INTEREST.........................................................iv

TABLE OF AUTHORITIES ............................................................ xiii

STATEMENT OF RELATED CASES ..................................................xv

STATEMENT OF ISSUES ....................................................................1

STATEMENT OF THE CASE................................................................2

    A.    Overview Of The Challenged Patents.......................................2

    B.    District Court Claim Construction. .........................................8

        1.    In The Oxylabs Litigation, The District Court Construed "Client Device" And "Second Server" Based On Each Device's Role. .....................................................................8

        2.    The District Court Maintained Its Role-Based Constructions In Both The *Code200* And NetNut Cases. ...................................12

    C.    IPR Proceedings. .................................................................13

SUMMARY OF ARGUMENT ...........................................................16

ARGUMENT ....................................................................................19

   I.    THE COURT SHOULD AFFIRM THE BOARD'S ROLE-BASED CONSTRUCTIONS OF "CLIENT DEVICE" AND "SECOND SERVER." ....................................................19

    A.    The Claims And Specification Support The Board's Role-Based Constructions Of "Client Device" And "Server.".............................20

    B.    The Prosecution History Does Not Support Bright Data's Proposed Hardware-Based Constructions..........................................34

    C.    Contrary To Bright Data's Argument, Role-Based Constructions Properly Distinguish Between The Claimed "Client Device" And "Server." ...........................................38

   II.    THE COURT SHOULD AFFIRM THE BOARD'S DETERMINATIONS THAT ALL CHALLENGED CLAIMS ARE INVALID IN LIGHT OF CROWDS, BORDER, MORPHMIX, AND/OR PLAMONDON. ...............................................42

# TABLE OF CONTENTS—Continued

A.    The Board Correctly Found The Independent Claims Of The '342, '319, '510, And '344 Patents Invalid In Light Of Crowds.......42

B.    The Board Correctly Found The Independent Claims Of The '342, '319, '510, And '344 Patents Invalid In Light Of Border. .......47

C.    The Board Correctly Found The Independent Claims Of The '319 And '510 Patents Invalid In Light Of MorphMix. ...................50

D.    The Board Correctly Found The Independent Claims Of The '319 And '510 Patents Invalid In Light Of Plamondon....................54

1.    Bright Data Shows No Error In The Board's Application Of Its Constructions To Plamondon. ...................................................54

2.    Plamondon Also Anticipates Under Bright Data's Proposed Constructions.................................................................................55

III.    THE BOARD CORRECTLY FOUND THAT BRIGHT DATA'S SECONDARY CONSIDERATIONS EVIDENCE HAS NO NEXUS TO THE CLAIMED INVENTION. ........................................58

CONCLUSION....................................................................................60

CERTIFICATE OF COMPLIANCE

DECLARATION OF AUTHORITY

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952 (Fed. Cir. 2014) ...................................56

*Bright Data Ltd. v. NetNut Ltd.*, No. 2:21-CV-225 (E.D. Tex.).......................12, 15

*CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359 (Fed. Cir. 2002) .................20

*Eli Lilly and Co. v. Zenith Goldline Pharmaceuticals, Inc.*, 471 F.3d 1369 (Fed. Cir. 2006) .........................................................................57

*EWP Corp. v. Reliance University Inc.*, 755 F.2d 898 (Fed. Cir. 1985) .................57

*Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379 (Fed. Cir. 2008) ......................................................................................20

*Hill-Rom Servs. v. Stryker*, 755 F.3d 1367 (Fed. Cir. 2014) ...................................29

*Luminati Networks Ltd. v. Code200, UAB*, No. 2:19-CV-00396 .................8, 11, 12

*Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340 (Fed. Cir. 2004) ...........................................................................................33

*In re Petering*, 301 F.2d 676 (C.C.P.A. 1962).........................................................57

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ...................................20, 31

*Powell v. Home Depot USA*, 663 F.3d 1221 (Fed. Cir. 2011).....................19, 24, 31

*Ruiz v. A.B. Chance Co.*, 357 F.3d 1270 (Fed. Cir. 2004).......................................59

*Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362 (Fed. Cir. 2012) .................................................................................20, 21, 24, 30

**Statute:**

35 U.S.C. § 101 .......................................................................................................10

## STATEMENT OF RELATED CASES

Appellees state that there has been no prior appeal to the Federal Circuit or any other appellate court from the proceedings below. Appellees are aware of the below-listed cases that will be directly affected by this Court's decision in the consolidated appeals that are the subject of this brief.

The following cases involve patents at issue in these consolidated appeals:

- *Bright Data Ltd. v. Teso LT, UAB, et al.*, No. 2:19-cv-395-JRG (E.D. Tex.)

- *Bright Data Ltd. v. Tefincom S.A.*, No. 2:19-cv-414-JRG (E.D. Tex.)

- Reexamination Control No. 90/014,875

- Reexamination Control No. 90/014,876

The following cases involve patents in the same family as the patents at issue in these consolidated appeals:

- *Luminati Networks Ltd. v. Tefincom SA d/b/a NordVPN*, No. 2:19-cv-00396-JRG (E.D. Tex)

- *Bright Data Ltd. v. Oxylabs, UAB*, No. 2:23-cv-00171-JRG (E.D. Tex)

- Reexamination Control No. 90/014,627

- Reexamination Control No. 90/014,652

- Reexamination Control No. 90/014,816

- Reexamination Control No. 90/014,827

- *Metacluster LT, UAB v. Bright Data Ltd.*, IPR2022-00687

# STATEMENT OF ISSUES

1.      Whether the Patent Trial and Appeal Board ("Board") correctly construed claim terms "client device" and "second server" in U.S. Patent Nos. 11,044,342 ("'342 Patent"), 10,257,319 ("'319 Patent"), 10,484,510 ("'510 Patent"), and 11,044,344 ("'344 Patent") (collectively, the "Challenged Patents").

2.      Whether the Board correctly found the independent claims[1] of the Challenged Patents[2] unpatentable in light of Crowds.

3.      Whether the Board correctly found the independent claims of the '342, '319, '510, and '344 Patents unpatentable in light of Border.

4.      Whether the Board correctly found the independent claims of the '319 and '510 Patents unpatentable in light of MorphMix.

5.      Whether the Board correctly found the independent claims of the '319 and '510 Patents unpatentable in light of Plamondon.

6.      Whether the Board correctly found that Bright Data Ltd.'s secondary considerations evidence has no nexus to the claimed invention.

---

[1]     As stated below, the Board found all challenged claims of the Challenged Patents unpatentable, *see infra* Section II, but Bright Data addresses only the independent claims of the Challenged Patents in its Brief. *See* Opening Br. 3 (referencing only the Board's findings as to the independent claims).

[2]     Those claims include claim 1 of the '342 Patent, claim 1 of the '319 Patent, claim 1 of the '510 Patent, and claims 1 and 24 of the '344 Patent.

## STATEMENT OF THE CASE

### A.    Overview Of The Challenged Patents.

The Challenged Patents share a common specification, which describes a "system designed for increasing network communication speed for users" that "releas[es] congestion from the Web by fetching [requested] information from multiple sources, and reliev[es] traffic from Web servers by offloading the data transfers from them to nearby peers." Appx1137 (Abstract).[3]  The system includes "multiple communication devices," each of which may "serve as a client, peer, or agent, depending upon the requirements of the network." Appx1160 at 4:41-50; *see also* Appx1161 at 5:21-39.  Each of the "client," "peer," and "agent" functionality is "provided by software stored within each communication device." *Id.*[4]

When an application (such as a Web browser) on a communication device generates a request for content from a Web server, "the client module" on the device intercepts that request.  Appx1164-1165 at 12:57-13:8.[5]  The client module then

---

[3]    For simplicity, this brief cites the '342 Patent when referencing material in the shared specification.

[4]    Bright Data mischaracterizes the Challenged Patents as being directed to a "residential proxy service."  Opening Br. 4.  The Challenged Patents never use the term "residential," nor do the claims in any way limit the recited methods to a "residential proxy service."

[5]    *See also* Appx1152 (Fig. 9); Appx1160 at 4:54-64 ("web server 152 is the server from which the client 102 is requesting information"); Appx1161 at 5:21-25 ("the application in the client 102 is requesting information from the Web server

determines the IP address of the target Web server and sends the Web server's IP address to an "acceleration server" to obtain a list of other communication devices in the system that can act as "agents" for the target Web server.  Appx1165 at 13:4-30; *see also* Appx1152 (Fig. 9).  The "client" then sends the request for content to the communication devices acting as "agents," requesting a list of other communication devices ("peers") that have previously received and stored a copy of some or all of the requested content.  Appx1165 at 13:31-36; Appx1165 at 13:50-61.[6]  The "agent" responds to the "client" with a list of those "peers," and the "client" contacts those "peers" requesting the content from the peers in parts and in parallel.  Appx1166 at 15:12-34; *see also* Appx1153-1154 (Figs. 10-11).  As a last resort, if the "agent" does not locate "peers" that previously received the requested content, the "agent" acts as a proxy by itself obtaining the content from the Web

---

152, which is why the software within the communication device designated this communication device to work as a client"); Appx1163 at 9:27-30 ("The client module 224 provides functionality required when the communication device 200 is requesting information from the Web server 152[.]").

[6]    *See also* Appx1152-1153 (Figs. 9-10); Appx1161 at 5:25-27 ("the agent 122 receives the request from the client 102"); Appx1160 at 3:20-31 (an "agent communication device" that is "assigned to" a particular "data server" "keeps track of which client communication devices have received responses to data requests from the assigned [Web] server" and "peer communication device[s] … store portions of data received in response to the data request by the at least one client communication device," which "may be transmitted to the at least one client communication device upon request by the client communication device").

server and returning the content to the client.  Appx1165-1166 at 14:62-15:1, 15:35-42; *see also* Appx1153 (Fig. 10).

The claims of the Challenged Patents—which use different terminology than the specification—are not directed to the entirety of this purported invention. Rather, the claims are directed only to the "last resort" scenario in which an "agent" acts as a proxy between a Web server and a "client" requesting content from the Web server.  In particular, the claims recite a "method for use with a Web server that responds to [HTTP] requests," in which the "first client device" acts as a proxy for a "second server" by retrieving requested content from a target Web server and returning the content to the "second server." *See*, *e.g.*, Appx1168 at 19:18-31 ('342 Patent, claim 1); Appx1197 at 19:16-32 ('319 Patent, claim 1); Appx1227 at 19:18-31 ('510 Patent, claim 1); Appx1260 at 19:16-25 ('344 Patent, claim 1); Appx1261 at 21:3-19 ('344 Patent, claim 24).[7]

The claims say nothing about the scenario described in the specification where the "client" (which, as discussed below, can only match the "second server" of the claims) obtains the requested content from "peers" in parts and in parallel.  Instead, the claims cover only the scenario where the "agent" does not locate peers that have

---

[7]    *See also* Appx9338 (Bright Data stating in district court litigation that the claims recite methods in which "a client device serves as a proxy between a server and a web server").

the requested content, and thus acts as a proxy by obtaining the content from the Web server and returning it to the "client" (*i.e.*, the "second server" of the claims).

As noted below, the disputed claim terms were construed in district court litigation. In that litigation, Bright Data and its expert created an annotated version (reproduced below) of Figure 3 from the Challenged Patents, which used color-coding to map the claimed "web server," "first client device," and "second server" to specific role-based components illustrated in Figure 3.



*See* Appx2884-2885 (Bright Data Opposition to Defendants' Motion to Dismiss).

As shown, Bright Data mapped (i) the claimed "first client device" (which acts as a proxy) to "agent 122" (outlined in red), (ii) the claimed "second server" to "client 102" (outlined in green), and (iii) the claimed "web server" to "web server

152" (outlined in blue). *Id.* Bright Data and its district court expert, Dr. Rhyne, also utilized this claim mapping in connection with claim construction in the that litigation. *See* Appx9340-9341 (Bright Data's opening claim construction brief in district court litigation); Appx17943-17944 (Dr. Ryhne's declaration in support of Bright Data's claim construction brief). Indeed, Dr. Rhyne emphasized that "***the 'client 102' of Figure 3 is an example of the 'second server' of the claims***." *Id.* (emphasis added).

The specification explains that the devices to which Bright Data mapped the separately-claimed "first client device" and "second server"—*i.e.*, "agent 122" and "client 102," respectively—are structurally identical "communications devices" that include software enabling them to serve in the role of "client, peer, or agent, depending upon requirements of the network." Appx1160-1161 at 4:44-53, 5:55-63; *see also* Appx1163 at 9:20-25 (explaining that "separate [software] modules that run in parallel," are activated depending on "the specific role that the communication device 200 is partaking … at a given time"). Bright Data later attempted to disavow its representation that the "first client device" and "second server" are structurally identical communication devices, but it has never offered a persuasive reason why it should not be held to its prior statements. *See* Appx172 (Board rejecting Bright Data's attempted disavowal of its prior representations).

Bright Data now attempts to map the claims to a different figure (reproduced below), which Bright Data misrepresents as an "annotated" version of Figure 3. *See* Opening Br. 13-14 (mapping the claimed "second server" to "proxy server 6" and the claimed "client device" to "agent 122").



Opening Br. 14, 35.

The figure above is ***not*** found in the Challenged Patents. *Compare* Appx1146 (Figure 3 of the Challenged Patents) *with* Opening Br. 14. Instead, Bright Data's IPR expert, Dr. Williams, ***created*** the above figure by inserting a specific element— "proxy server 6"—from prior-art Figure 1[8] at an arbitrary location "between client

---

[8]    *See* Appx1144 (Figure 1); Appx1160 ("Fig. 1 is a schematic diagram providing a prior art example of use of a proxy within a network.").

102 and agent 122 of Figure 3." Appx7171-7173 at ¶ 64. Dr. Williams provided no evidence that the figure he created reflects the **claimed architecture**, and, as the Board found, Dr. Williams "provide[d] no explanation or a rationale to combine the prior art with an embodiment of the invention." Appx25-26; *see also* Appx7171-7173 at ¶ 64. Similarly, neither Dr. Williams nor Bright Data offered any explanation for departing from the claim mapping previously advanced by Bright Data and its district court expert, Dr. Rhyne.

**B.    District Court Claim Construction.**

**1.    In The Oxylabs Litigation, The District Court Construed "Client Device" And "Second Server" Based On Each Device's Role.**

The terms "client device" and "second server" were twice construed in *Bright Data Ltd. v. Oxylabs, UAB f/k/a Teso LT, UAB*, No. 2:19-CV-00395 (E.D. Tex.) ("Oxylabs Litigation"),[9] which involved the '319 and '510 Patents. *See* Appx2944-2948. The district court first expressly rejected Bright Data's arguments that the claimed "client device" and "second server" have hardware-based distinctions. *Id.* Instead, the district court concluded that the terms refer to the devices' roles in the network, as the claims do not recite any structural differences

---

[9]    In the filings below, this litigation was referred to as the "Teso Litigation." For consistency with Bright Data's opening brief, Appellees' brief refers to it as the Oxylabs Litigation.

and the specification teaches the use of structurally identical "communication devices" that can serve in different roles depending on the needs of the network. *Id.* Accordingly, the district court construed "client device" as a "communication device that is operating in the role of a client" and "second server" as a "server that is not the client device." Appx2946; Appx2948.

When it became apparent that Bright Data was nonetheless relying on hardware-based distinctions to avoid prior art in the Oxylabs Litigation, the defendants "request[ed] clarification" that (i) the claimed "second server" is "a device that is operating in the role of a server and does not require any specific hardware," and (ii) although the "second server" and "first client device" must be physically separate devices, the "second server" need not operate exclusively as a server (*i.e.*, it can also operate as a client). Appx2996-2998. The district court issued a Supplemental Claim Construction Order, determining that a formal change of construction for the term "second server" was unnecessary because "Defendants' understanding of the scope of the construction … is correct." Appx3011. Thus, under the district court's construction, the term "second server" means "a device that is operating in the role of a server and that is not the first client device." Appx3008.

In providing this clarification, the district court again rejected Bright Data's assertion that the "second server" requires a different type of hardware than the "first client device" and also made clear that role-based constructions ***do not*** require the

claimed devices to operate exclusively in one role. Appx3007-3011. Specifically, the district court explained that "a component can be configured to operate in different roles—so long as it does not simultaneously serve as more than one of: ***the*** client device, ***the*** first server/second server, and ***the*** web server." Appx3010 (emphasis added). Accordingly, the negative limitation "not the client device" in the construction of "second server" does not refer to a class of devices; it refers to the specific entities recited in the claim such that the same physical device cannot simultaneously serve as both ***the claimed*** "first client device" and ***the claimed*** "second server." *Id.* The construction does not, however, require that the "first client device" exclusively operate as a "client" or the "second server" exclusively operate as a "server." *Id.*

The district court did not deviate from its role-based constructions later in the litigation. In denying Oxylab's motion challenging the eligibility of '319 and '510 Patents' claims under 35 U.S.C. § 101, the district court did not address whether there is a hardware-based distinction between a "client device" and "server," as Bright Data erroneously implies. Opening Br. 18. Rather, the district court's decision was premised on its conclusion that the claims are directed to an improvement in network technology because they employ "a non-traditional network structure with a client-device acting as a proxy." Appx6320-6323. Consistent with its constructions, the district court focused on role-based

functionality "provided by software stored within each communication device." Appx6329 (concluding that, though the claims "make use of general purpose computers," they are non-abstract in light of the "functionality … provided by software stored within each communication device"); *see also* Appx27 (Board observing that the "district court's *Alice* order acknowledged the court's prior claim construction … and did not modify that construction").

Further, when the district court ruled on pre-trial motions in the Oxylabs Litigation, it precluded Bright Data's expert from testifying that the claimed "client device" is limited to "residential devices" or that "a client device cannot be a server," Appx6307-6308, and thereby reinforced that the terms "client device" and "second server" do not refer to different types of hardware.

Following trial, the district court *sua sponte* issued an order staying the Oxylabs Litigation "until the ultimate resolution of each of the *Ex Parte* Reexamination ('EPR') proceedings and *Inter Partes* Review ('IPR') proceedings instituted as to all patents asserted by Bright Data in [the] case." *Bright Data Ltd. v. Oxylabs, UAB f/k/a Teso LT, UAB*, No. 2:19-CV-00395, Dkt. No. 636 (E.D. Tex. Feb. 28, 2023). The court explained that, "with all the asserted claims of all Asserted Patents … being subject to instituted IPRs or finally rejected in EPR," "the benefits of a stay outweigh the costs of postponing resolution on certain issues that may

ultimately prove irrelevant in the event that at least some of Bright Data's claims may not survive." *Id.* at 4.

### 2.     The District Court Maintained Its Role-Based Constructions In Both The *Code200* And NetNut Cases.

In *Luminati Networks Ltd. v. Code200, UAB*, No. 2:19-CV-00396, which involved patents that share the same specification, the district court maintained its role-based constructions of the terms "client device" and "second server." *See* Appx2969-2973. The district court also reinforced its prior statements that role-based constructions ***do not*** require the claimed devices to operate exclusively in one role, stating:

> [T]he client device is defined by the role of the communication device as a client rather than by the components of the device and ***regardless of any additional role the device may serve, including as a server***.

Appx2971 (emphasis added).

Similarly, in *Bright Data Ltd. v. NetNut Ltd.*, No. 2:21-CV-225 (E.D. Tex.), which involved the '319 and '510 Patents, the district court maintained its role-based constructions and again rejected Bright Data's argument that a "client device" and "second server" require different types of hardware. Appx6586-6599. In particular, the district court rejected Bright Data's argument that the term "client device" should be construed as "consumer device" and instead maintained its prior role-based construction. Appx6589. Similarly, the district court rejected Bright Data's contention that a "server" "is a 'robust' piece of hardware that is 'dedicated' to

providing content," and reiterated that the "distinction between a client device and server device" is role-based (*i.e.*, "a component can be configured to operate in different roles"). Appx6595-6596; *see also* Appx664-666 (Board noting that Bright Data's "representations of the district court's claim construction rulings are incomplete and inaccurate" and finding that the district court's rulings "do not favor [Bright Data]").

### C.    IPR Proceedings.

In the eight IPR proceedings from which these consolidated appeals arise, the Board considered and rejected each of the arguments Bright Data now makes to this Court advocating claim constructions that draw hardware-based distinctions between the claimed "client device" and "second server." *See* Appx10-40; Appx161-188; Appx341-360; Appx501-532; Appx658-671; Appx735-753; Appx969-991; Appx1056-1076.[10]

---

10    Role-based constructions were also adopted by the USPTO during reexamination of the '510 Patent and another patent that shares the same specification. *See* Appx7876 (citing Appx18038; Appx18131). During reexamination of the '510 Patent, the USPTO construed "client device" as a "device that acts, at least at some point, as a client" and "server" as a "device that acts, at least at some point, as a server." Appx18038. And during reexamination of a patent that shares the same specification, the USPTO likewise interpreted "client" and "server" to define a device's role, rather than its hardware, stating that "[a] computer can be both a client and server depending on what role it is playing at a particular time." Appx18131.

The Board, like the district court before it, concluded that the specification of the Challenged Patents defines a device's type based on its role, not its hardware. *See, e.g.*, Appx31 (finding that "the client device is defined by the role of the communication device as a client rather than by the components of the device and regardless of any additional role the device may serve, including as a server"); Appx24-25 (finding that the specification discloses that, "due to the functionality provided by software stored within each communication device," it may operate in different roles "depending upon the requirements of the network").[11]  The Board rejected Bright Data's argument that role-based constructions are purportedly unworkable because the claims require the "first client device" to operate as both a client and a server. *See, e.g.*, Appx31-32.  The Board explained that Bright Data's argument incorrectly assumes that role-based constructions require that a device "act exclusively in only one role … at all times"—they do not.  Appx31.

The Board explained that "the client device is defined by the role of the communication device as a client," "regardless of any additional role the device may serve, including as a server."  Appx31.  Thus, while the claims preclude the same physical device from simultaneously serving as both the claimed "first client device"

---

[11]    For simplicity, this brief references the Board's decision in IPR2022-00103, involving the '342 patent, where the Board's decision was substantively identical to its decisions in the other IPRs at issue in these appeals.

and "second server," there is no requirement that the "first client device" operate exclusively as a client or that the "second server" operate exclusively as a server. Appx31-32. "In fact, to require that a device operate exclusively in only a single role and not be able to operate in different roles at different time[s] is inconsistent with the language of [the claims]," which recite "the first client device [acting] as a client and as a server at different times." *Id.*

The Board also rejected Bright Data's various arguments that the specification purportedly distinguishes "client devices" from "servers" based on hardware. For example, the Board rejected Bright Data's argument that the patentee acted as its own lexicographer to define "client devices" as "computers of consumers" because the portion of the specification Bright Data relied on related exclusively to a "prior art peer-to-peer file[ ] sharing system, which [the specification] distinguishe[s] from the invention." Appx32-33. The Board likewise rejected Bright Data's argument that the specification describes servers as dedicated commercial devices, explaining that the portions of the specification Bright Data invoked to support that argument related to prior art proxy servers, which the specification identified "as the point of differentiation [between] the invention [and] the prior art." Appx29; *see also* Appx25-26. The Board likewise rejected the figure Bright Data created to support those arguments, which Bright Data's expert created by inserting the prior art proxy server from Figure 1 into the purportedly inventive network architecture of Figure

3. Appx25. The Board found that the configuration shown in Bright Data's figure "is not shown in any figure in the [Challenged Patents] or disclosed in the specification," and Bright Data's expert provided "no rationale to combine the prior art with an embodiment of the invention." Appx25-26.

As to the prosecution history, the Board found that portions of the prosecution history Bright Data put forward were of little significance because they did not express a clear intent to define or limit the scope of the terms "client device" or "second server." *See* Appx354-358.

## SUMMARY OF ARGUMENT

The Board correctly construed the claim terms "client device" and "second server" in accordance with their plain and ordinary meaning in the web/communications field. And, contrary to Bright Data's citations to incomplete and out-of-context portions of the district court's analysis, the district court also repeatedly rejected the same arguments Bright Data makes here—and the Board correctly endorsed that analysis. As both the Board and the district court correctly found, under their plain and ordinary meaning, the terms "client" and "server" refer to a device's role, not a type of hardware. The specification of the Challenged Patents also designates device types based on the roles they perform in a network, rather than their hardware.

During the district court litigation, Bright Data likewise initially made no hardware-based distinction when explaining how the claimed "client device" and "second server" correspond to disclosed embodiments, instead mapping the claimed devices to structurally identical communication devices described in the specification. Bright Data began arguing for a hardware-based distinction between the claimed "client device" and "second server" only when it became necessary for Bright Data to do so to attempt to distinguish the claims of the Challenged Patents from the prior art. But Bright Data's proposed hardware-based constructions find no support in the intrinsic record. None of the recited method steps require any particular hardware nor do the claims recite any hardware property of the claimed "client device" or the claimed "second server." The specification likewise makes no hardware-based distinction between the devices it describes as performing the recited steps and, in fact, describes those devices as having identical hardware.

Unable to point to anything in the specification that distinguishes the claimed "client device" and "second server" based on hardware, Bright Data instead created a new figure in which Bright Data added a prior-art proxy server to the purportedly inventive architecture of Figure 3. But the Challenged Patents do not describe or illustrate the use of a prior-art proxy server as part of the purported invention. To the contrary, the limited portions of the specification on which Bright Data relies relate to the ***prior art***, not the purported invention. For example, as support for its

argument that a "client device" is a "consumer computer," Bright Data relies on a portion of the specification discussing a prior art peer-to-peer file sharing system, which the specification *distinguishes* from the claimed invention. Similarly, as support for its argument that a "server" requires commercial hardware, Bright Data relies on the specification's discussion of the disadvantages associated with prior art systems that employ dedicated, commercial equipment to operate as proxy servers. But the Challenged Patents do not disclose overcoming those disadvantages by employing an architecture in which "commercial hardware" makes a proxy request to a "consumer computer" as Bright Data alleges. Rather, they expressly teach away from the use of such equipment in the purported invention, and instead describe the purported invention as employing structurally identical communication devices to operate multiple roles within a network, including as a proxy.

Bright Data also contorts the prosecution history in an effort to support Bright Data's proposed deviation from the plain and ordinary meaning of the disputed terms. Rather than support Bright Data, however, the prosecution history demonstrates that the same type of hardware can serve in both the role of a "client" and a "server." Indeed, in the prosecution of an ancestor patent, the patentee expressly stated that its "client device" operated as both a cache server *and* client.

Bright Data's remaining arguments regarding whether the Board correctly found that the challenged claims are anticipated by the asserted prior art are premised

on its contention that the Board erred by adopting role-based constructions that are consistent with the plain and ordinary meaning of the disputed terms. Because Bright Data has not—and cannot—demonstrate that the Challenged Patents clearly express an intent to redefine the disputed terms, the Court should reject Bright Data's arguments and affirm the Board's Final Written Decisions.

## ARGUMENT

### I.    THE COURT SHOULD AFFIRM THE BOARD'S ROLE-BASED CONSTRUCTIONS OF "CLIENT DEVICE" AND "SECOND SERVER."

The plain and ordinary meaning of the terms "client" and "server" in the web/communications field refer to a device's role, rather than its hardware. *See*, *e.g.*, Appx2418-2425 (industry standard defining "client" and "server" based on role).[12] Bright Data agues, however, that the disputed terms should be construed contrary to their plain and ordinary meaning because the Challenged Patents purportedly use "client" and "server" to reference different types of hardware, rather than different roles. But Bright Data's argument that it somehow served as its own lexicographer by defining well-understood terms contrary to their plain and ordinary meaning, Opening Br. 24, finds ***no support*** in the intrinsic record. The Court has

---

[12]    As explained below, this industry standard (which defines the HTTP protocol) is expressly referenced in the specification of the Challenged Patents, and thus is part of the intrinsic record. *See Powell v. Home Depot USA*, 663 F.3d 1221, 1231 (Fed. Cir. 2011).

established an "exacting" standard for a patentee who contends it has overridden a plain meaning through idiosyncratic lexicography: the patent "must 'clearly set forth a definition of the disputed claim term'" and "'clearly express an intent' to redefine the term." *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (quoting *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002); *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1381 (Fed. Cir. 2008)). As the Board correctly found, Bright Data did not come close to carrying this burden.

To the contrary, as explained below, the role-based plain and ordinary meanings of "client" and "server"—and thus the Board's corresponding role-based constructions—are consistent with the claims and specification of the Challenged Patents, the prosecution history, and Bright Data's own prior mapping of the claims to Figure 3 of the Challenged Patents. In its attempt to show otherwise, Bright Data mischaracterizes the specification and prosecution history, and alters Figure 3 of the Challenged Patents to depict an architecture not illustrated or described in the Challenged Patents.

### A. The Claims And Specification Support The Board's Role-Based Constructions Of "Client Device" And "Server."

As the Board recognized, claim construction analysis must "begin with the language of the claims themselves." Appx20 (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005)). The only claim language Bright Data identifies

that could conceivably connote hardware are the words "client" and "server." But none of the recited method steps for the claimed "client device" or "second server" require any particular hardware nor do the claims recite any hardware properties. *See*, *e.g.*, Appx20-23 (Board finding the same). Thus, the claims provide no basis for overriding the plain and ordinary meaning in favor of a hardware-based distinction between the "first client device" or "second server." *Id*.[13]

Bright Data's arguments in support of its proposed hardware-based constructions focus primarily on the specification, which Bright Data alleges distinguishes between "client devices" and "servers" based on hardware. Opening Br. 24-25. But the specification makes no such distinction. The specification defines a device's type based on "the role" of the device, ***not*** its hardware. *See*, *e.g.*, Appx31 (Board finding that "the client device is defined by the role of the communication device as a client rather than by the components of the device"). For example, the specification describes structurally identical "communication devices" that are designated as different device-types (*i.e.*, "client," "agent," "peer") based on their role in a communication session. Appx1161 at 5:21-34.[14] Further, the

---

13    The Board's claim construction analysis is substantially the same across the IPRs from which these appeals originate, so for simplicity Appellees cite to the Board's Final Written Decision in IPR2022-00103.

14    *See also* Appx1161 at 5:49-57 (describing "communication devices" as containing "general components of a computer"); *id.* at 5:58-63 (describing the

specification explains that a device is not limited to operating exclusively in one role—instead, "software stored within each communication device" allows a particular device to serve in different roles "depending upon the requirements of the network." Appx1160 at 4:41-50. The software includes "a client module 224, a peer module 226, and an agent module 228, each of which comes into play according to the *specific role* that the communication device 200 is partaking in the communication network *at a given time*." Appx1163 at 9:20-25 (emphasis added); *see also* Appx1161 at 5:56-57 ("the communication device 200 … may serve as a client, agent, or peer"). Thus, as the Board correctly concluded, the specification supports role-based constructions under which a device is defined by its "role … rather than by the components of the device and regardless of any additional role the device may serve." Appx31.

The specification also explains that a given "communication device" can, and typically does, play more than one functional role at any given time. The specification describes, upon start up, initializing all three of the "client," "agent," and "peer" modules in the "communication device" such that the device can serve in all three roles during operation. Appx1164 at 11:62-12:56. The specification further explains that for a "communication device" to act as a proxy in response to

---

hardware of a communication device, with no variation based on its role within the network).

a request from a "client," that "communication device" utilizes the "agent" module and also the "peer" module, as it "provides itself as the only peer" to deliver the requested content.  Appx1165-1166 at 14:62-15:11, 15:35-42.

The specification's use of roles to designate device types is consistent with another portion of the intrinsic record:  RFC 2616, which is an industry standard that defines the Hypertext Transfer Protocol (HTTP) and that is expressly referenced in the specification of the Challenged Patents.[15]  RFC 2616 uses role-based definitions to define "client" as "[a] program that establishes connections for the purpose of sending requests" and "server" as "[a]n application program that accepts connections in order to service requests by sending back responses."  Appx2425; *see also* Appx31 (Board favorably citing same).  RFC 2616 further states that components are not limited to serving exclusively in one role; rather, "[a]ny given program may be capable of being both a client and a server" and its designation as one or the other "refers only to the role being performed by the program for a particular connection." Appx2425; *see also* Appx31 (Board favorably citing same); Appx2333-2334 at ¶¶ 66-68 (Petitioner's expert explaining same).  In fact, RFC 2616 defines a "proxy"

---

[15]    *See* Appx1166 at 16:12-28 (specification referencing "the HTTP protocol" "defined by RFC 2616"); Appx1141 (RFC 2616 listed among the prior art cited on the face of the Challenged Patents).

as "act[ing] as both a server and a client for the purpose of making requests on behalf of other clients." Appx2426.

Bright Data attempts to dismiss RFC 2616 as irrelevant on the basis that the claims purportedly "can rely on other protocols" besides HTTP. Opening Br. 51-52. That is not true for at least the '319, '342, and '510 Patents, which expressly recite use of HTTP. *See* Appx1168 at 19:18-31 ('342 Patent, claim 1 reciting recite a method for use with "a web server that responds to Hypertext Transfer Protocol (HTTP)"); Appx1197 at 19:16-32 ('319 Patent, claim 1 reciting similar); Appx1227 at 19:18-31 ('510 Patent, claim 1 reciting similar). Regardless, Bright Data's argument ignores the fact that RFC 2616 is expressly referenced in the specification, and therefore is ***intrinsic*** evidence for purposes of claim construction. *Powell*, 663 F.3d at 1231. Further, as explained by the Petitioner's expert in IPR2022-00135, RFC documents are "known, used, and treated as standards by people working with computer networking" and "are regarded as foundational documents for working with the Internet." Appx9181-9182 at ¶¶ 116-122. Thus, RFC 2616 reflects the plain and ordinary, role-based meaning of the terms "client" and "server" in the Web communications field.

Nothing in the specification supports making a hardware-based distinction between the claimed "client device" and "second server" or "express[es] a clear intent" to deviate from the role-based plain and ordinary meaning of the terms

"client" and "server." *See*, *e.g.*, *Thorner*, 669 F.3d at 1367-68. Bright Data's arguments to the contrary mischaracterize the specification and are inconsistent with Bright Data's prior representations.

***First***, in district court litigation, Bright Data and its expert mapped the claims to the specification in a manner that directly contradicts Bright Data's currently proposed constructions. Specifically, Bright Data mapped the claimed "first client device" and the claimed "second server," respectively, to "agent 122" and "client 102" of Figure 3. *See*, *e.g.*, Appx2884-2885 (mapping claim 1 of the '319 Patent and claim 1 of the '510 Patent to Figure 3); Appx9340-9341 (same); Appx17943-17944 (Bright Data's district court expert utilizing the mapping and stating that "the 'client 102' of Figure 3 is an example of the 'second server' of the claims"). As noted above, the specification makes no hardware-based distinction between the communication devices designated as "agent 122" and "client 102"—instead, it describes them as structurally identical devices. *See* Appx1160 at 4:44-61 (describing "agent 122" and "client 102" as structurally identical "communication devices" that serve in different roles "depending upon the requirements of the network"); Appx1161 at 5:49-57 (describing "communication devices" as containing "general components of a computer"); *id.* at 5:58-63 (describing the hardware of a communication device, with no variation based on its role).

The portion of Bright Data's district court brief excerpted below illustrates its mapping, with the "first client device" mapped to "agent 122" (outlined in <span style="color:red">red</span>) and the "second server" mapped to "client 102" (outlined in <span style="color:green">green</span>).



Appx2885. Though Bright Data has since attempted to disavow this mapping—after it apparently recognized a need to adopt different constructions to distinguish its patents from the prior art—Bright Data has never offered a persuasive reason why it should not be held to its prior representation.[16]

---

[16]    In an effort to justify its retreat from this mapping of the claims to Figure 3, Bright Data now argues that its annotations were "merely illustrating the lines of communication" and "[t]he point being made was never that 'client 102' was a server but that a server *could* also be located where 'client device' 102 was shown." Opening Br. 52, n.35 (emphasis added).    But that post-hoc justification does not make sense.    As the Board correctly found, "[f]rom the accompanying text it is clear

Nor does Bright Data offer an alternative way to map any ***actual*** embodiment to the steps of the claims. In Figure 3—which Bright Data characterizes as the "inventive embodiment" (Opening Br. 33)—the communication device labeled "agent 122" is the only device that performs the steps that the claims recite being performed by the "first client device" (*i.e.*, receiving requests from a requesting device, forwarding those requests to a web server, by receiving content from the Web server, and then sending the content to the requesting device). Appx1165-1166 at 14:62-15:1, 15:35-42. And the communication device labeled "client 102" is the only device that performs the recited steps of the claimed "second server"—*i.e.*, sending a request for content to agent 122 and receiving content back from agent 122. Appx1165-1166 at 13:31-36, 14:62-15:1. Thus, the specification does not disclose ***any*** embodiment in which two devices that can be distinguished based on hardware perform the recited steps of the claimed "first client device" and the claimed "second server."

***Second***, because the specification does not disclose an embodiment that supports Bright Data's arguments concerning hardware-based distinctions, Bright Data created an entirely new figure that is not found in the Challenged Patents and mischaracterizes it as an "architecture" that the "specification and claims set out."

---

… that the purpose of [Bright Data's brief and its expert's declaration] was to explain how the various elements of the claim are depicted in the specification …." Appx669-670.

Opening Br. 32; *see also id.* 13-14 (misrepresenting Bright Data's newly created

figure as "an annotated figure" from the Challenged Patents).[17]   As the Board

correctly found, the purported "architecture" shown in Bright Data's new figure "is

***not shown in any figure in the [patents] or disclosed in the specification***." Appx25-

26 (emphasis added).   Bright Data created the new figure by taking proxy server 6

from Figure 1—which illustrates the prior art—and inserting it at a specific location

in Figure 3.   Appx25-26.   But neither the claims nor the specification provides any

basis for Bright Data's addition of a prior-art proxy server to the purportedly

inventive architecture shown in Figure 3.   Appx26 (Board finding same); *see also*

Appx5461-5464 (Bright Data's IPR expert conceding that the specification does not

describe adding a prior art proxy server to the purportedly inventive network

architecture of Figure 3).   Nor does the specification support Bright Data's assertion

that this new figure "is the purported architecture [of the invention]." Appx26.   To

the contrary, the specification ***teaches away*** from using the prior-art proxy server

shown in Figure 1, stating that the use of dedicated commercial proxy servers is

"impractical" in the context of the problem the Challenged Patents purport to solve.

Appx1159 at 2:8-39.   Even on appeal, Bright Data cites only to Dr. William's

---

[17]    *See also* Appx42628 at 110:17-15 (Bright Data's expert stating that none of
the components in the ***actual*** version of Figure 3 "correspond to the [claimed]
second server … under [Bright Data's] construction").

testimony and not any portion of the specification as justifying its creation of this figure. Opening Br. 13, n.13; *see also* Appx25-26 (Board finding same).

***Third***, Bright Data erroneously contends that the specification "define[s] 'client devices' to mean 'computers of consumers.'" Opening Br. 24-25 (citing Appx1159 at 2:44-46). But the portion of the specification Bright Data cites does not refer to—much less define—what constitutes the ***claimed*** "client device." Rather, it refers to a ***different and specific client device***—"client device 60" of a ***prior art*** peer-to-peer file sharing system, which the specification ***distinguishes*** from the claimed invention. Appx1159-1160 at 2:40-3:3. In contrast, when describing the "invention," the specification nowhere refers to a "consumer computer," nor does it state that prior art "client device 60" has any role in the invention. *See*, *e.g.*, Appx33 (Board finding same); *see also Hill-Rom Servs. v. Stryker*, 755 F.3d 1367, 1371 (Fed. Cir. 2014) ("The standards for finding lexicography … are exacting … a patentee must clearly set forth a definition of the disputed claim term").

Moreover, as the Board observed, even in the context of the prior art, the specification does not use "consumer computer" to refer to an end-user's device (as Bright Data incorrectly implies). *See*, *e.g.*, Appx33. Instead, "consumer" is used to distinguish between "a consumer of content, as opposed to a broadcaster of content." *Id.*; Appx1159 at 1:54-63 (distinguishing between a "consumer" of content, and a "content distributor"/ "broadcaster" of content). Thus, as the Board correctly

concluded, the portion of the specification Bright Data invokes is not relevant to the meaning of "client device" as used in the claims. *See*, *e.g.*, Appx32-33. As noted, Bright Data bears the exacting burden to show that the specification "clearly set[s] forth a definition of the disputed claim term and clearly express an intent to redefine the term." *Thorner*, 669 F.3d at 1365 (cleaned up). A stray reference to a portion of the specification describing a prior art system distinct from the claimed invention—and, even there, used to reference a consumer of content, not a type of device—does not come close to satisfying that heavy burden.

**Fourth**, Bright Data argues that the specification purportedly defines client devices and servers as "different types of network components." Opening Br. 39-40. But Bright Data points to nothing in the specification that distinguishes the claimed "client device" and "second server" based on hardware. As explained above—and as the Board and district court found—the specification discloses that the recited method steps of the claimed "client device" and "second server" are performed by structurally identical "communication devices" that include software enabling them to function in different roles depending on the needs of the network. *See supra* at 21-22, 27; *see also*, *e.g.*, Appx24-34.

As the Board correctly concluded, the fact that the specification does not expressly list "server" among the roles played by the "communication devices" is insufficient to support a hardware-based distinction, particularly given that the

specification otherwise makes no such distinction.  *See*, *e.g.*, Appx28-29; *see also* Appx31 (Board finding specification discloses that devices can "act in different roles with software modules allowing different functions").  Though the specification references certain other servers—*i.e.*, proxy servers, acceleration servers, and Web servers—it never expressly references the "second server" of the claims.  Rather, as explained above, the only device described in the specification as performing the recited method steps of the "second server" is "client 102" of Figure 3, which the specification states is structurally identical to "agent 122" that performs the recited method steps of the claimed "client device."  Appx1160 at 4:44-61 (describing "agent 122" and "client 102" as structurally identical "communication devices" that serve in different roles "depending upon the requirements of the network").

Bright Data's contention that clients and servers are mutually exclusive hardware types is also contradicted by the prosecution history.  During prosecution of the related '936 Patent, the patentee stated that the ***client devices*** recited in the '936 Patent's pending claims ***operated "as both cache-servers AND clients*.**"  Appx3412-3413 (emphasis added).  Similarly, the Harrow reference cited by the examiner during prosecution of the '936 Patent,[18] *see* Appx3420-3421, states that "a client can range from a larger server to a handheld device," so "***clients may be***

---

[18]    Because the examiner cited Harrow, it is ***intrinsic*** evidence.  *Powell*, 663 F.3d at 1231; *Phillips*, 415 F.3d at 1317.

*servers*, desktops, laptops, PDAs … or any other device capable of communicating with other devices." Appx16828 at [0057].

*Fifth*, Bright Data argues that portions of the specification distinguishing the prior art do not "make any sense if a client device is the same type of hardware as a server." Opening Br. 39; *see also id.* 37-39, 49-50. That argument is likewise unavailing. The specification teaches away from using the type of server hardware Bright Data says is required (*i.e.*, dedicated commercial servers). Specifically, the specification explains that using "proxy servers" is "[o]ne solution" to the speed and bandwidth problems the Challenged Patents purportedly aim to solve, but deploying large numbers of dedicated commercial servers—as would be required "to provide a comprehensive solution"—is "impractical." Appx1159 at 2:8-39.

Instead, the patents describe using software that allows structurally identical "communication devices" to serve in different roles "depending upon the requirements of the network." Appx1160 at 4:44-50. In particular, as explained above, the specification describes and illustrates a system in which one such "communication device" performs the recited method steps of the claimed "client device" and another performs the recited method steps of the claimed "second server." *See supra* at 21-22, 27. Thus, Bright Data's contention that the "second server" is a dedicated, commercial server is directly contrary to the teachings of the Challenged Patents.

Bright Data's contention is also contrary to statements in the specification of U.S. Patent No. 10,469,614 ("'614 Patent"), which names the same inventors as the Challenged Patents, is directed to technology in the same field, and is also owned by Bright Data.  *See* Appx18549.  In addition, the '614 Patent incorporates by reference another Bright Data patent—U.S. Patent No. 8,560,604, which is the grandparent of the '319 Patent and has the same specification as the Challenged Patents. Appx18704 at 31:59-64.  The '614 Patent states that "[e]ach of the clients or devices herein may consist of … any client or device described in the '604 patent." Appx18730 at 83:11-14.  The '614 Patent further states that "any device referred to herein as a 'client device' … may be implemented as a computer serving as a server device," Appx18736 at 95:53-61, and "***each of the devices denoted herein as servers, may equally function as a client***," Appx18748 at 119:19-20 (emphasis added).  Because the inventors are the same, and the statements in the '614 Patent applied to the incorporated-by-reference specification of the Challenged Patents, the statements in the '614 Patent demonstrate that the inventors of the Challenged Patents understood that the Challenged Patents' "client device" can be a "server" and its "server" can "function as a client."  Appx18736 at 95:53-61; Appx18748 at 119:19-20.  Bright Data's attorney argument cannot trump the explanation the inventors provided directly to the Patent Office.  *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1350 (Fed. Cir. 2004) (relevance of inventors' statement about

scope of invention disclosed in "common specification," when prosecuting a different patent, "is enhanced by the fact that it was made in an official proceeding in which the patentee had every incentive to exercise care in characterizing the scope of its invention").

In sum, Bright Data's assertion that there is a hardware-based distinction between the "first client device" and "second server" is inconsistent with the specification, which distinguishes devices based on their role rather than their hardware, and with the role-based plain and ordinary meaning of the terms "client" and "server." And Bright Data certainly has not satisfied the "exacting" burden to show that the specification "clearly" evidences an intent to redefine the plain and ordinary meaning of those terms.

### B. The Prosecution History Does Not Support Bright Data's Proposed Hardware-Based Constructions.

Bright Data argues that the prosecution history "precludes constructions that are role-based" because the patentee purportedly "defined" "client devices" and "servers" based on differences in hardware. Opening Br. 26-30. As the Board correctly recognized, the portions of the prosecution history cited by Bright Data are inapposite. *See* Appx34-38.

*First*, Bright Data points to the prosecution history of U.S. Patent 10,069,936 ("936 Patent), which is an ancestor to the Challenged Patents. Opening Br. 27-29. Bright Data focuses on statements made by the patentee in response to an Office

Action dated January 10, 2017.  *Id.* at 27-28 (citing Appx3410-3411; Appx3413-3414).  But the patentee's statements do not support Bright Data's position.

At the time of the January 10, 2017 Office Action, the '936 Patent's pending claims recited a method in which (i) a "requesting client" sends to a "first server" a request for content from a Web server, and (ii) the first server forwards the request to another "client," which acts as a proxy to obtain the content from the Web server.  Appx3441-3442.  In other words, the pending claims recited a "client" acting as a proxy to obtain content for a "requesting client."  The patentee argued that the prior-art Garcia reference was distinguishable because it purportedly did not disclose "using clients as content sources for other clients."  Appx3410.  Instead, the patentee argued that Garcia described "consumer owned" client devices that request information from "dedicated" cache servers.  Appx3410.  The patentee argued that Garcia's "consumer owned" client devices were resource-limited and thus—unlike the client devices of the pending claims—could not be employed to act as a proxy for other client devices.  Appx3411.  Thus, contrary to Bright Data's assertion, the patentee did not define its "client device" as a "consumer owned" device—it did just the opposite by distinguishing the claimed "client device" from the consumer owned devices in the prior art.

The patentee's statements about Garcia's "dedicated" cache servers are likewise inapposite.  The patentee did not purport to define a "server" as a particular

type of hardware. The patentee argued that Garcia's dedicated cache servers were distinguishable from the claimed client devices, which operated "as both cache-servers AND clients." Appx3412-3413. Thus, rather than distinguish a "client device" from a "server" based on hardware, the patentee did the opposite by asserting that the same hardware could serve in both roles. Accordingly, the patentee's statements during prosecution of the '936 Patent directly contradict Bright Data's argument that there is a hardware-based distinction between clients and servers and its argument that a device must operate exclusively in a single role.

Bright Data further argues that the '936 Patent's prosecution history supports a hardware-based distinction because the examiner purportedly "accepted Bright Data's argument that a server cannot be equated to a client device." Opening Br. 28-29. As explained above, however, the patentee *did not* make that assertion. Instead, the patentee merely contended that the method of Garcia in which a dedicated cache server acted as a proxy for a client was distinct from the method of the '936 Patent's pending claims, in which client devices act "as both cache-servers AND clients." *See* Appx3410-3413; Appx34-46 (Board's similar rejection of Bright Data's arguments based on the '936 Patent's prosecution history).

*Second*, Bright Data points to statements in the prosecution history of the '319 Patent, in which the patentee argued that the claims were not directed to "a generic computer," but instead recited "specific networking of physical elements such as

36

servers and clients." Opening Br. 29 (citing Appx3207). But those statements demonstrate only the patentee's contention that the claimed "client device" and "second server" are non-generic, physical devices—they do not reflect any assertion that those devices are structurally different from one another. Appx3207; *see also* Appx37 (Board's rejection of similar argument).

*Third*, Bright Data argues that the examiner's allowance of the '342 and '344 Patents over the "the Crowds reference" reflects a finding by the examiner that "a client device - client device - web server architecture" is distinct from the "second server - client device - web server architecture recited in the claimed methods." Opening Br. 29 (citing Appx5626, Appx5664). But the cited portions of the prosecution history merely reflect that the examiner reviewed the Crowds reference—they do not include any statement by the examiner as to the basis for allowance of the claims over that reference. And, as explained below, that allowance was erroneous.

Other portions of the prosecution history for the Challenged Patents—which are discussed above and which Bright Data does not address—affirmatively demonstrate that clients and servers do ***not*** require different types of hardware. *See supra* Section I.A (citing Appx3412-3413 (patentee stating that "client devices" can operate "as both cache-servers AND clients"); Appx16828 at [0057] (cited prior art reference stating that "a client can range from a larger server to a handheld device;"

37

thus, "***clients may be servers***, desktops, laptops, PDAs … or any other device capable of communicating with other devices").

### C.    Contrary To Bright Data's Argument, Role-Based Constructions Properly Distinguish Between The Claimed "Client Device" And "Server."

Bright Data further argues that the claim language does not "make[] sense" unless "'client device' and 'server' are distinguished from each other as different types of hardware."   Opening Br. 43-44, 47-48.   Bright Data's insistence that hardware-based distinctions are necessary for the claims to "make[] sense" cannot be squared with Bright Data's prior representations.  As explained above, in district court litigation Bright Data mapped the claimed "client device" and "second server" to the structurally identical "agent 122" and "client 102" of Figure 3.  *See supra* at 5-6, 25-27.  In addition, Bright Data's IPR expert, Dr. Williams, used the Board's role-based constructions to map the claims to "Bright Data's residential proxy service."  Appx5448 at 32:13-18.  The fact that Bright Data and its expert applied the Board's  role-based device definitions in mapping the claims to the specification and Bright Data's commercial product belies Bright Data's argument that role-based constructions purportedly do not make sense.

Regardless, Bright Data's argument is unavailing.  Bright Data analogizes the claimed "client device" and "server" to baseball players, arguing that defining "pitcher" and "catcher" based on the player's respective roles of "throwing" and

"catching" fails to distinguish between the two players, as neither exclusively throws

or catches.  Opening Br. 48.  But Bright Data's argument is based on the false

premise that a role-based definition requires a player (or device) to act exclusively

in one role.  Keeping with Bright Data's baseball analogy, a catcher need not

exclusively catch the ball to be "operating in the role of a catcher."  The structure of

the game requires two physically separate players defined as "catcher" or "pitcher"

based on the position in which they are playing.  The fact that the player serving as

the team's catcher sometimes throws the ball does not mean he or she is

indistinguishable from the physically separate player serving as the team's pitcher.

And while the same person cannot serve as pitcher or catcher at the same time, it is

certainly possible for the same person to play in both positions at different times.

The same is true here.  As the Board correctly concluded, a device need not

exclusively operate as a "client" to be a "communication device that is operating in

the role of a client."  *See*, *e.g.*, Appx47 (rejecting contention that "a component has

to operate exclusively in a single role"); Appx179 ("Patent Owner argues that if there

is no … exclusivity in roles, 'there is no difference between Petitioner's

constructions for 'client device' and server.' We disagree."); Appx195 ("a 'first

client device' may … perform different roles with different functions at different

times, but still is a 'first client device'").[19]   As explained above, both the plain language of the claims and the specification demonstrate that a particular device "may operate to perform different functions and roles," including operating in multiple roles in parallel.  *See supra* Section I.A; *see also* Appx23-24 (Board finding same).

Further, as with the baseball players, the fact that the claimed "first client device" operates as both a client and a server does not mean the "first client device" and "second server" are indistinguishable under the Board's constructions, as Bright Data erroneously contends.  Opening Br. 47.  The Board's construction of "second server" as "a server that is ***not the client device***" reflects the requirement that the "second server" and "first client device" be two physically separate devices, like the two physically separate baseball players discussed above.  Appx38.  That is, under the Board's construction, the "second server" is distinguishable from the "first client device" because it is a device "operating in the role of a server" and it is not the same physical device as ***the claimed*** "first client device."  *See* Appx40 (although "a component can be configured to operate in different roles," it cannot simultaneously serve as more than one of ***the claimed devices***).

---

[19]    *See also* Appx161 (citing district court's conclusion that "the role-based construction applies 'regardless of any additional role the device may serve'").

Further, Bright Data cannot justify, through criticism of role-based constructions, its hardware-based constructions that are both unsupported by the specification (as discussed above) and fail to define the boundaries of the claims. Bright Data's formulation of "server" as "not a client device" is not a meaningful construction, but an attempt to avoid the fact that Bright Data and its expert have never been able to define the purported "hardware" properties of a "server." *See* Appx39580-39583 (Petitioner's reply briefing concerning the inability of Bright Data's expert to define the boundaries of Bright Data's proposed "client device"); Appx39585-39587 (same regarding "second server").

In sum, Bright Data's argument that the terms "client device" and "second server" refer to different types of hardware finds no support in the intrinsic record. In contrast, the role-based constructions adopted by the Board (and the district court before that) are consistent with (a) the intrinsic record, including the claims and specification of the Challenged Patents, as well as the prosecution history; (b) Bright Data's own prior representations; and (c) the plain and ordinary meaning of the terms "client" and "server" in the Web/communications field. Accordingly, the Court should reject Bright Data's and affirm the Board's constructions of "client device" and "second server."

## II. THE COURT SHOULD AFFIRM THE BOARD'S DETERMINATIONS THAT ALL CHALLENGED CLAIMS ARE INVALID IN LIGHT OF CROWDS, BORDER, MORPHMIX, AND/OR PLAMONDON.

The Board found every challenged claim of the '342, '319, '510, and '344 Patents invalid in light of at least one of Crowds, Border, MorphMix, and Plamondon, either alone or combination with other prior art. Appx73; Appx234; Appx408; Appx567; Appx710-711; Appx798-799; Appx1042; Appx1134. Bright Data limits its appeal arguments to the independent claims—*i.e.*, claim 1 of the '342 Patent, claim 1 of the '319 Patent, claim 1 of the '510 Patent, and claims 1 and 24 of the '344 Patent. *See* Opening Br. 3, 54-66.

### A. The Board Correctly Found The Independent Claims Of The '342, '319, '510, And '344 Patents Invalid In Light Of Crowds.

In IPR2022-00103, IPR2022-00353, IPR2022-01492, IPR2022-01493, IPR00915, and IPR2022-00916,[20] the Board found the independent claims of the Challenged Patents anticipated by Crowds (Appx2391-2417). *See* Appx73; Appx567; Appx710-711; Appx798-799; Appx1042; Appx1134. The Board found that Crowds describes a system for "increasing the privacy of web transactions," whereby a user joins a "crowd" of other users and passes requests for content though another random member (or series of members) of the "crowd" rather than

---

[20]    Appeal Nos. 23-2144, 23-2147, 23-2442, 23-2443, 23-2414, and 23-2415 originate from IPR2022-00103, IPR2022-00353, IPR2022-01492, IPR2022-01493, IPR00915, and IPR2022-00916, respectively. *See* Opening Br. 1.

submitting them directly to the target Web server. Appx42 (citing Appx2391-2392);[21] *see also* Appx1485-1487 (IPR Petition); Appx2327-2330 at ¶¶ 57-61 (Petitioner's expert).

The system operates through a software application, called a "jondo," which is installed on each user's computer. Appx24 (citing Appx2398); *see also* Appx1486-1487; Appx2329-2330 at ¶¶ 60-61. When a Web browser on a user's computer generates a request for content, the user's jondo "initiates the establishment of a random path of jondos [on other user computers] that carries its user's transactions to and from their intended web servers." Appx43 (citing Appx2398); *see also* Appx1487-1488; Appx2329-2331 at ¶¶ 61-62. Figure 2 of Crowds (reproduced below) illustrates possible paths between "jondos" 1 through 6 and Web servers 1 though 6, where the initiator and its targeted web server are labeled with the same number. Appx43 (citing Appx2398-2399); *see also* Appx1487-1489; Appx2330-2331 at ¶ 62.

---

21　The Board's analysis concerning Crowds' anticipation of the Challenged Patents' independent claims is substantially the same in the Final Written Decisions for all relevant IPRs. Thus, for simplicity, Appellees cite to the record for IPR2022-00103.



Fig. 2. Paths in a crowd (the initiator and web server of each path are labeled the same).

Appx2399.

The Board found that, in the communication path from jondo 5 to Web server 5 (jondo 5 - jondo 4 - jondo 6 - web server 5, highlighted in green in the annotated version of Figure 2 below), the devices on which jondo 6 and jondo 4 reside meet the requirements of the claimed "first client device" and "second server," respectively. Appx45-50; *see also* Appx1489-1495; Appx2336-2341 at ¶¶ 73-81.



Appx44.

As to the "first client device," the Board found that the device on which jondo 6 resides is "a communication device that is operating in the role of a client" because it (i) is a "user's computer" that "facilitates communication between other devices, including web server 5 and jondo 4," and (ii) "is operating in the role of a client … of Web server 5" by "send[ing] web requests originating at jondo 5 … to web server 5 in the mapped path" shown above.  Appx45-46; Appx51-52.

As to the "second server," the Board found that the device on which jondo 4 resides is "a device that is operating in the role of a server and that is not the first client device" because it (i) "operates in the role of a server to jondo 5 by … sending web server 5's response back to jondo 5," and (ii) "is not the same physical device as jondo 6."  Appx48.  Those findings are supported by substantial evidence in Crowds itself and from Appellees' experts.  *See* Appx2391-2417; Appx 2336-2341 at ¶¶ 73-83.

Bright Data does not dispute the Board's findings that the jondo 6 device operates as a client to Web server 5 nor its finding that the jondo 4 device operates as a server to the jondo 5 device.  Bright Data instead argues that the Board misapplied its role-based constructions to Crowds because the Board failed to require that the "first client device" (jondo 6) function solely as a client and the "second server" (jondo 4) function solely as a server.  Opening Br. 56-57.  As discussed above, however, the Board's role-based constructions do ***not*** require such

exclusive behavior. *See supra* Section I.C. Indeed, the Board rejected the very same argument with respect to Crowds, explaining that "[u]nder the claim construction adopted, a device may perform different roles with different functions at different times." Appx51-52; *see also, e.g.*, Appx47-48 (rejecting Bright Data's argument that "a component has to operate exclusively in a single [client or server] role" to be "first client device" or "second server"); Appx49 (same). Accordingly, if the Court affirms the Board's role-based constructions—as it should for the reasons explained above—the Court should also affirm the Board's determination that Crowds anticipates the independent claims of the '342, '319, '510, and '319 Patents.

Bright Data separately argues that, under its proposed hardware-based constructions, the device on which jondo 4 resides cannot be the "second server" because it is "a user computer[]," which Bright Data contends is the type of hardware used for a "client device[], not [a] server." Opening Br. 56. As explained above, however, Bright Data's proposed constructions find no support in the intrinsic record and thus should be rejected by this Court, as they were by the Board and district court many times. *See supra* Sections I.A-B.

### B. The Board Correctly Found The Independent Claims Of The '342, '319, '510, And '344 Patents Invalid In Light Of Border.

In IPR2022-01492, IPR2022-01493, IPR00915, and IPR2022-00916,[22] the Board found the independent claims of the '319 and '510 Patents anticipated by Border (Appx41496-41510). *See* Appx710-711; Appx798-799; Appx1042; Appx1134. The Board found that "Border describes '[a] communication system for retrieving web content,'" which includes a "downstream server 105" and "upstream server 107" that act as proxies between "user station 101" and "web server 109." Appx673-674 (quoting Appx41496; citing Appx41505 at 4:8-11, 4:30-31); *see also* Appx38998-39005 (Petitioner's arguments concerning Border's anticipation of '319 Patent, claim 1); Appx40448-40450 at ¶¶ 44-47 (Petitioner's expert); Appx40467-40474 ¶¶ 107-123 (same).[23] Figure 1 of Border (reproduced below) illustrates the system.

---

[22]    Appeal Nos. 23-2442, 23-2443, 23-2414, and 23-2415 originate from IPR2022-01492, IPR2022-01493, IPR00915, and IPR2022-00916, respectively. *See* Opening Br. 1.

[23]    The Board's analysis concerning Border's anticipation of the '319 and '510 Patents' independent claims is substantially the same in the Final Written Decisions for relevant IPRs. Thus, for simplicity, Appellees cite to the decision in IPR2022-01492.



*FIG. 1*

Appx41497; *see also* Appx674 (Board citing same).

When the Web browser of "user station 101" generates a request for content from Web server 109, the request is transmitted to "downstream server 105," which serves as a proxy for "user station 101." Appx673 (citing Appx41505 at 3:35-36, 3:61-65); *see also* Appx38999-39000 (IPR Petition); Appx40448-40450 at ¶¶ 45, 47 (Petitioner's expert); Appx40468-40470 at ¶¶ 109-115.  Downstream server 105 sends the request to "upstream server 107," which also serves as a proxy by retrieving the requested content from Web server 109 and sending it back to "user station 101" via "downstream server 105."  Appx673-674 (citing Appx41505 at 3:38-43, 4:5-7); *see also* Appx38999-39000 (IPR Petition); Appx40448-40450 at ¶¶ 45, 47 (Petitioner's expert); Appx40468-40470 at ¶¶ 109-115 (same).

The Board found that "upstream server 107" meets the requirements of the claimed "first client device." Appx699-700 (summarizing Petitioner's contentions

concerning anticipation by Border); Appx701 ("We find that for the reasons given by Petitioner, … Border teaches or suggests each limitation of claim 1"). As explained by the Petitioners in the above-listed IPRs, "upstream server 107" operates in the role of a client "because it requests a service of another computer system by requesting web content" from Web server 109. Appx39000-39001 (IPR Petition); Appx40467-40470 ¶¶ 107-115 (Petitioner's expert). The Board further found that "downstream server 105" meets the requirements of the claimed "second server." Appx699-701. As explained by the Petitioners, "downstream server 105" operates in the role of a server because "it accepts a connection from web browser 103" and sends content back to web browser 103 in response. Appx39000-39001 (IPR Petition); Appx40467-40470 ¶¶ 107-115 (Petitioner's expert). Those findings are supported by substantial evidence in Border itself and from Appellees' experts. *See*, *e.g.*, Appx38998-39005 (Petitioner's citations to Border); Appx40448-40450 at ¶¶ 44-47 (Petitioner's expert); Appx40467-40474 ¶¶ 107-123 (same).

Bright Data's arguments concerning Border are effectively the same as its arguments concerning Crowds. Bright Data does not dispute the Board's findings that the "upstream server 107" operates as a client and "downstream server 105" operates as a server, but nonetheless argues that they do not satisfy the claims as construed because neither device operates ***exclusively*** in the role of client or server. Opening Br. 59. Again, however, the Board's role-based constructions do ***not***

require such exclusive behavior, *see supra* Section I.C, and the Board expressly rejected Bright Data's exclusivity argument in its analysis of Border. *See*, *e.g.*, Appx700-701. Accordingly, if the Court affirms the Board's role-based constructions—as it should for the reasons explained above—the Court should also affirm the Board's determination that Border anticipates the independent claims of the '319 and '510 Patents.

Bright Data separately argues that, under its proposed hardware-based constructions, the "upstream server 107" and "downstream server 105" cannot be the claimed "first client device" and "second server" because they "are the same type of network component." Opening Br. 58-59. As explained above, Bright Data's proposed constructions find no support in the intrinsic record and thus should be rejected by this Court, as they were by the Board and district court. *See supra* Sections I.A-B.

### C. The Board Correctly Found The Independent Claims Of The '319 And '510 Patents Invalid In Light Of MorphMix.

In IPR2022-01492, IPR2022-01493, IPR00915, and IPR2022-00916,[24] the Board found the independent claims of the '319 and '510 Patents anticipated by MorphMix (Appx40570-40876). *See* Appx710-711; Appx798-799; Appx1042;

---

[24]    Appeal Nos. 23-2144, 23-2147, 23-2442, 23-2443, 23-2414, and 23-2415 originate from IPR2022-00103, IPR2022-00353, IPR2022-01492, IPR2022-01493, IPR00915, and IPR2022-00916, respectively. *See* Opening Br. 1.

Appx1134. The Board found that "MorphMix is focused on 'achieving anonymous

Internet access" and describes a "peer-to-peer-based mix network," in which a node

establishes a communication path (referred to as a "tunnel") through other nodes so

that it can "access a server anonymously." Appx675-676 (quoting Appx40575;

Appx40687); *see also* Appx39013-39021 (Petitioner's arguments concerning

MorphMix's anticipation of '319 Patent, claim 1); Appx40450-40451 at ¶¶ 48-50

(Petitioner's expert); Appx40483-40485 ¶¶ 152-158.[25]   Figure 5.1 of MorphMix

(reproduced below) illustrates the system.



**Figure 5.1:** *Basic idea of MorphMix.*

Appx40687; *see also* Appx675 (Board citing same).   In Figure 5.1, "node *a* has

---

[25]    The Board's analysis concerning MorphMix's anticipation of the '319 and
'510 Patents' independent claims is substantially the same in the Final Written
Decisions for relevant IPRs.  Thus, for simplicity, Appellees cite to the decision in
IPR2022-01492.

established an anonymous tunnel" to server *s* "via [nodes] *b* and *c*." Appx40688; *see also* Appx675 (Board finding same). "The first node in a tunnel (*a*) is the initiator, the last node (*c*) is the final node, and the nodes in between (*b*) are intermediate nodes." *Id.* An anonymous tunnel allows applications, such as a Web browser, on node *a* to communicate anonymously with server *s*. Appx40689; Appx675 (Board finding same); *see also* Appx39013-39021; Appx40450-40451 at ¶¶ 48-50 (Petitioner's expert); Appx40483-40485 at ¶¶ 152-158.

The Board found that MorphMix's node *c* meets the requirements of the claimed "first client device." Appx706-707 (summarizing Petitioner's contentions concerning anticipation by MorphMix); Appx707 ("We find, for the reasons given by Petitioner, … that MorphMix teaches or suggests each limitation of claim 1"). As explained by the Petitioners in the above-listed IPRs, node *c* operates in the role of a client with respect to server *s*. *See* Appx39015 (IPR Petition); Appx40485-40489 at ¶¶ 159-171 (Petitioner's expert). The Board further found that MorphMix's node *b* meets the requirements of the claimed "second server." Appx706-707. As explained by the Petitioners, node *b* operates in the role of a server because it accepts and responds to a request for content from node *a*. *See* Appx39017-39018 (IPR Petition); Appx40485-40489 at ¶¶ 159-171 (Petitioner's expert). Those findings are supported by substantial evidence in MorphMix itself and from Appellees' experts.

*See*, *e.g.*, Appx39013-39021 (IPR Petition); Appx40450-40451 at ¶¶ 48-50 (Petitioner's expert); Appx40483-40491 at ¶¶ 152-180 (same).

Bright Data's arguments concerning MorphMix are the same as its arguments concerning Crowds and Border. Bright Data again does not dispute the Board's fact finding concerning MorphMix, but argues that MorphMix's nodes do not satisfy the claims as construed because they do not operate ***exclusively*** in the role of client or server. Opening Br. 61-62. That argument is unavailing because, as explained above, the Board's role-based constructions do ***not*** require such exclusive behavior. *See supra* Section I.C; *see also* Appx707 (Board's rejection of Bright Data's exclusivity argument with respect to MorphMix). Accordingly, if the Court affirms the Board's role-based constructions—as it should for the reasons explained above—the Court should also affirm the Board's determination that MorphMix anticipates the independent claims of the '319 and '510 Patents.

Bright Data likewise repeats its argument that, under its proposed hardware-based constructions, the node *c* and node *b* cannot be the claimed "first client device" and "second server" because they are "the same type of network component." Opening Br. 61. Again, Bright Data's proposed constructions find no support in the intrinsic record and thus should be rejected by this Court, as they were by the Board and district court. *See supra* Sections I.A-B.

**D.    The Board Correctly Found The Independent Claims Of The '319 And '510 Patents Invalid In Light Of Plamondon.**

    **1.    Bright Data Shows No Error In The Board's Application Of Its Constructions To Plamondon.**

In IPR2022-00135 and IPR2022-00138,[26] filed by The Data Company Technologies Inc. (d/b/a Nimble), the Board found the independent claims of the '319 and '510 Patents anticipated by Plamondon (Appx9493-9617).  *See* Appx202; Appx375.  The Board found that Plamondon's "client 102" meets the "second server" limitation in claim 1 of the '319 and '510 Patents because Plamondon expressly discloses that "client 102" can be a "server."  Appx195-196; Appx369-370.  The Board's conclusion is supported by substantial evidence in Plamondon itself and from Petitioner's expert, Dr. Levin.  Appx9553 at [0210]; Appx9555 at [0229]; Appx9557 at [0238]; Appx9197-9212 at ¶¶ 155-189; Appx21753-21786 at ¶¶ 153-186.  Similarly, the Board found that Plamondon's "appliance 200" meets the "first client device" limitation of claim 1 of the '319 and '510 Patents because it plainly operates as a client when it requests and receives objects from "server 106."  Appx191-201; Appx364-375.  The Board's conclusion is supported by substantial evidence in Plamondon itself and from Petitioner's expert, Dr. Levin.  Appx9583-9585 at [0442]-[0453]; Appx9214-9217 at ¶¶ 195-203.

---

[26]    Appeal Nos. 23-2145 and 23-2146 originate from IPR2022-00135 and IPR2022-00138, respectively. *See* Opening Br. 1.

Bright Data does not challenge these factual findings. Bright Data instead argues that the Board misapplied its role-based constructions because it failed to require that the "first client device" function solely as a client and the "second server" function solely as a server. Opening Br. 63-64. Again, the Board's role-based constructions simply do not require such exclusive behavior, *see supra* Section I.C, and the Board expressly rejected that argument with respect to its analysis of Plamondon. *See*, *e.g.*, Appx195-196 ("a component does not have to exclusively operate in only a single role—it may operate in different roles at different times"). Accordingly, if this Court affirms the Board's non-exclusive, role-based constructions—as it should—the Court should also affirm the Board's determination that Plamondon invalidates the independent claims of the '319 and '510 Patents.

## 2.    Plamondon Also Anticipates Under Bright Data's Proposed Constructions.

In its Petitions (Appx7355-7460; Appx20128-20228), Appellee The Data Company showed that Plamondon anticipates claim 1 of the '319 and '510 Patents even under Bright Data's proposed constructions. Appx7386-7396; Appx20164-20175. The Board did not reach this issue. If the Court were to adopt Bright Data's proposed constructions—though it should not for the reasons explained above—the Court could and should still affirm in Appeal Nos. 23-2145 and 23-2146 because Bright Data's arguments under its constructions fail as a matter of law. At a minimum, adoption of Bright Data's proposed constructions would require remand

for the Board to consider The Data Company's argument that Plamondon anticipates under Bright Data's proposed constructions.

*First*, Bright Data argues that, although Plamondon discloses its "client 102" functioning as an application server for other clients 102a-102n, *see* Appx9553 at [0210], this "is not the same as the claimed 'second server,'" which Bright Data contends must be "an intermediary for fetching content," *i.e.*, a proxy server. Opening Br. 64. Neither the independent claims nor the Board's constructions, however, limit the manner in which the "second server" must function as a server. And the '319 and '510 Patents disparage proxy servers. Appx1188 at 2:24-39; Appx1218 at 2:27-42. This is one of several examples of Bright Data making arguments "directed to limitations that do not appear in the claims." Appx193; Appx366. As the Board correctly explained, "[t]hat an application server may be different than a proxy server does not mean that it does not function as a server" as claimed. Appx196; Appx370. Bright Data's arguments directed to non-existent claim limitations do not require remand. *Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 970 (Fed. Cir. 2014) (remand unnecessary where "the content of the prior art" and "the scope of the patent claim … are not in material dispute").

*Second*, Bright Data argues that Plamondon's clear disclosure of "client 102" being a "server" and "appliance 200" being a "client device" (Appx9555 at [0229]; Appx9557 at [0238]) are insufficient because "a POSA would not at once envisage"

those implementations. Opening Br. 65. The "at once envisage" concept has no application here. That language originated in *In re Petering*, 301 F.2d 676 (C.C.P.A. 1962), which **upheld** rejections over prior art disclosing a 20-compound genus. *Id.* at 681. Here, Plamondon discloses a mere seven-item list for its "client 102" and "appliance 200." One is a server, another is a workstation, and the remaining five (bolded) are devices that Appellant concedes are "client devices" under its construction: workstation, **desktop**, **laptop/notebook**, server, **handheld computer**, **mobile telephone**, **smartphone**. Appx9555 at [0229]; Appx9557 at [0238]. While a person of ordinary skill might not "at once envisage" one compound among millions, *Eli Lilly and Co. v. Zenith Goldline Pharmaceuticals, Inc.*, 471 F.3d 1369, 1376 (Fed. Cir. 2006), Plamondon clearly discloses using a "server" as "client 102" and an undisputed "client device" as "appliance 200." *EWP Corp. v. Reliance University Inc.*, 755 F.2d 898, 907 (Fed. Cir. 1985) ("A reference must be considered for everything it teaches.").

Bright Data's remaining arguments are premised on mischaracterizations of Plamondon. Bright Data argues that Plamondon is limited to a "corporate network," making it inappropriate to select for "appliance 200" a device that constitutes a "client device" under Bright Data's construction, such as a mobile telephone. Opening Br. 65-66. But even the paragraph Bright Data cites merely says a corporate network is one "example" implementation. Appx9552 at [0205]. Bright

Data also argues that a "client device" under its construction (such as a mobile phone) lacks "sufficient processor power and memory capacity" to perform the operations required of Plamondon's "appliance 200." Opening Br. 66. In the very same paragraph, however, Plamondon offers specific examples of mobile phones that are suitable, including smartphones made by Nokia, Motorola, and Sony. Appx9557 at [0238].

In conclusion, this Court should affirm in Appeal Nos. 23-2145 and 23-2146 even if it adopts Bright Data's constructions.

## III. THE BOARD CORRECTLY FOUND THAT BRIGHT DATA'S SECONDARY CONSIDERATIONS EVIDENCE HAS NO NEXUS TO THE CLAIMED INVENTION.

Bright Data' argument that the Board erred in its findings concerning Bright Data's secondary considerations evidence is based entirely on the premise that the Board's role-based constructions are "incorrect." Opening Br. 66. As explained above, however, the Board's role-based constructions are correct. *See supra* Section I.A-C. Thus, this Court should affirm them and, in turn, the Board's findings on secondary considerations.

Regardless, the Board's conclusion that Bright Data "failed to establish a nexus" between the challenged claims and Bright Data's residential proxy service does not hinge on the Board's claim constructions. *See*, *e.g.*, Appx67. The Court reviews conclusions regarding secondary considerations only for clear error. *See*,

*e.g.*, *Ruiz v. A.B. Chance Co.*, 357 F.3d 1270, 1276 (Fed. Cir. 2004). The Board committed no error here, much less clear error. Bright Data failed to establish the required nexus because it "relie[d] on features of its products that are ***not*** claimed," such as "the proxy client devices having ***residential IP addresses***" and the purported "scalability of its architecture 'given the large number of proxy client devices having residential IP addresses'." Appx62 (emphasis added). Even under Bright Data's proposed constructions of "client device"—which should be rejected for the reasons explained above—the claims merely require a "consumer computer," not a ***residential*** IP address. Appx63 (Board finding that "the challenged claims, however, do not include any limitations requiring … residential IP addresses"). Indeed, Bright Data's expert conceded this point. Appx42574-42575 at 56:4-12, 56:19-57:6 (deposition of Bright Data's expert); Appx67615-67616 at 199:23-200:11 (same); *see also* Appx39603-39605 (Petitioner's briefing regarding same); Appx1916-1919 (Petitioner's reply arguing that Bright Data failed to establish a nexus even under its proposed constructions). Accordingly, Bright Data has not shown any clear error in the Board's nexus analysis or the findings related thereto.

# CONCLUSION

For the foregoing reasons, the Court should affirm the Board's Final Written

Decisions.

Respectfully submitted,

/s/ Michael N. Rader
Michael N. Rader
WOLF, GREENFIELD & SACKS, P.C.
605 Third Avenue
New York, NY 10158
(212) 697-7890

Adam R. Wichman
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
(617) 646-8000

*Counsel for Appellee The Data
Company Technologies Inc.*

/s/ Jason R. Bartlett
Jason R. Bartlett
Wensheng Ma
MASCHOFF BRENNAN
450 Sansome Street, Suite 1005
San Francisco, CA 94111
(415) 738-6334

*Counsel for Appellee Major Data UAB*

May 1, 2024

/s/ Jonathan S. Franklin
Jonathan S. Franklin
Norton Rose Fulbright US LLP
799 Ninth Street, N.W., Suite 1000
Washington, DC 20001
(202) 662-0466

Mark T. Garrett
Stephanie N. DeBrow
Norton Rose Fulbright US LLP
98 San Jacinto Blvd., Suite 1100
Austin, TX 78701
(512) 536-3094

Daniel Leventhal
Norton Rose Fulbright US LLP
1301 McKinney Street
Houston, TX 77010
(713) 651-8360

*Counsel for Appellees Code 200, UAB;
Teso LT, UAB;* m*etacluster lt, UAB;
Oxysales, UAB; and coretech lt, UAB*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7(C), I certify that the foregoing filing is proportionately spaced in 14-point font and, according to the word processing program in which it was generated contains 13,549 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b).

Date: May 1, 2024                 /s/ Jonathan S. Franklin
                                  Jonathan S. Franklin
                                  NORTON ROSE FULBRIGHT US LLP

                                  *Counsel for Appellees Code200, UAB, Teso LT, UAB, metacluster lt, UAB, Oxysales, UAB, and coretech lt, UAB*

## DECLARATION OF AUTHORITY

Pursuant to Federal Circuit Rule 47.3(d), I certify that each of the other Appellees shown above has authorized me to sign and file this brief on their behalf.

Date: May 1, 2024                 /s/ Jonathan S. Franklin
                                  Jonathan S. Franklin
                                  NORTON ROSE FULBRIGHT US LLP

                                  *Counsel for Appellees Code200, UAB, Teso LT, UAB, metacluster lt, UAB, Oxysales, UAB, and coretech lt, UAB*