**2023-2144, 2023-2145, 2023-2146, 2023-2147,
2023-2414, 2023-2415, 2023-2442 & 2023-2443**

# United States Court of Appeals
# for the Federal Circuit

BRIGHT DATA LTD.,

*Appellant,*

– v. –

CODE200, UAB, TESO LT, UAB, METACLUSTER LT, UAB, OXYSALES,
UAB, THE DATA COMPANY TECHNOLOGIES INC., MAJOR DATA UAB,
CORETECH LT, UAB,

*Appellees.*

*On Appeals from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in Nos. IPR2022-00103, IPR2022-
00135, IPR2022-00138, IPR2022-00353, IPR2022-00915, IPR2022-
00916, IPR2021-01492, IPR2022- 00861, IPR2021-01493 and
IPR2022-00862*

## REPLY BRIEF FOR APPELLANT

KORULA T. CHERIAN
ROBERT M. HARKINS, JR.
CHERIAN LLP
2001 Addison Street, Suite 275
Berkeley, California 94704
(510) 944-0190
sunnyc@cherianllp.com
bobh@cherianllp.com

THOMAS M. DUNHAM
RONALD R. WIELKOPOLSKI
CHERIAN LLP
1901 L Street NW, Suite 700
Washington, DC 20036
(202) 838-1560
tomd@cherianllp.com
ronw@cherianllp.com

*Counsel for Appellant*

June 5, 2024

 COUNSEL PRESS   (800) 4-APPEAL • (323483)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................ iii

I.   INTRODUCTION ........................................................1

II.  BRIGHT DATA'S CONSTRUCTIONS PROPERLY
     DIFFERENTIATE THE DISPUTED TERMS AS DIFFERENT
     TYPES OF HARDWARE........................................................4

     A.   APPELLEES CONCEDE THAT THE PATENTEE DEFINED
          THE DISPUTED TERMS IN RESPONSE TO PRIOR IPR
          PETITIONS—THIS ALONE IS DISPOSITIVE OF THE
          CLAIM CONSTRUCTION ISSUES........................................5

     B.   THE SPECIFICATION SETS FORTH CLEAR
          LEXICOGRAPHY FOR "CLIENT DEVICE" AS A
          "COMPUTER OF A CONSUMER" ........................................6

     C.   A POSA WOULD HAVE UNDERSTOOD THAT SERVER
          HARDWARE IS DIFFERENT FROM CONSUMER
          COMPUTER HARDWARE........................................8

     D.   A COMPARISON OF FIG. 1 AND FIG. 3 OF THE
          SPECIFICATION REQUIRES HARDWARE-BASED
          CONSTRUCTIONS TO DIFFERENTIATE AN
          INTERMEDIARY CLIENT DEVICE AND AN
          INTERMEDIARY SERVER ........................................9

          1.   Client 102 and agent 122 of FIG. 3 are the same type of
               hardware components ........................................12

          2.   Client 102 of FIG. 3 is not a server hardware
               component........................................14

     E.   THE SPECIFICATION TEACHES AWAY FROM THE
          USE OF A PROXY SERVER AS AN EXIT-NODE TO
          COMMUNICATE WITH A WEB SERVER ........................................18

     F.   THE ORIGINAL PROSECUTION HISTORIES MAKE
          CLEAR THAT CLIENT DEVICES AND SERVERS ARE
          DIFFERENT TYPES OF HARDWARE........................................20

i

III.    THE PTAB'S CONSTRUCTIONS REQUIRE A CLIENT DEVICE TO "OPERATE IN THE ROLE OF A CLIENT" AND A SECOND SERVER TO "OPERATE IN THE ROLE OF A SERVER" CONTRADICTING THE EXPRESS CLAIM LANGUAGE ...................... 23

    A.    Appellees mischaracterize Bright Data's baseball analogy ............... 26

IV.    THE PTAB FINDS "NO EXCLUSIVITY" REQUIRED IN ITS CONSTRUCTIONS, BUT IGNORES THAT WOULD MEAN ITS CONSTRUCTIONS DO NOT DIFFERENTIATE BETWEEN AN INTERMEDIARY CLIENT DEVICE AND AN INTERMEDIARY SERVER ........................................................................................ 27

    A.    Appellees mischaracterize the district court's constructions for support ............................................................................ 28

V.    THE PRIOR ART REFERENCES DO NOT DISCLOSE THE SPECIFIC ARCHITECTURE OF THE CLAIMS UNDER ANY SET OF CONSTRUCTIONS ......................................................... 30

VI.    BRIGHT DATA ESTABLISHED NEXUS AND PROPERLY MAPPED ITS RESIDENTIAL PROXY SERVICE TO THE CLAIMS .................................................................................. 34

VII.   CONCLUSION ............................................................... 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Am. Hoist & Derrick Co. v. Sonra & Sons, Inc.,*
   725 F.2d 1350 (Fed. Cir. 1984) ...................................................................22

*Cuozzo Speed Technologies, LLC v. Lee*,
   136 S. Ct. 2131, 195 L. Ed. 2d 423 (2016) .................................................5

*In re WesternGeco LLC,*
   889 F.3d 1308 (Fed. Cir. 2018) ...................................................................32

*Interactive Gift Exp., Inv. v. Compuserve Inc*.,
   256 F.3d 1323 (Fed. Cir. 2001) .....................................................................6

*Krippelz v. Ford Motor Co*.,
   667 F.3d 1261 (Fed. Cir. 2012) .....................................................................5

*Microsoft Corp. v. Biscotti, Inc.*,
   878 F.3d 1052 (Fed. Cir. 2017) ...................................................................32

*Microsoft Corp. v. DataTern, Inc*.,
   755 F.3d 899 (Fed. Cir. 2014) .......................................................................8

*PowerOasis, Inc. v. TMobile USA, Inc.,*
   522 F.3d 1299 (Fed. Cir. 2008) ...................................................................22

*Seabed Geosolutions (US) Inc. v. Magseis FF LLC*,
   8 F.4th 1285 (Fed. Cir. 2021) ........................................................................6

*Uniloc 2017 LLC v. Netflix, Inc.,*
   No. 21-2085, 2022 U.S. App. LEXIS 34595 (Fed. Cir. 2022) .....................6

## I.    <u>INTRODUCTION</u>[1]

Bright Data's Opening Brief explained why flaws in the PTAB's analysis require reversal based on this Court's *de novo* review of the PTAB's incorrect claim construction of two key claim terms and the important distinctions between them: "client device" versus "server." Appellees' Responsive Brief provides no substantive support for the PTAB interpretation. Indeed, Appellees just echo the PTAB's foundational error: failure to appreciate the significance of an invention that created a new type of computer network by the unconventional deployment of low-cost, ubiquitous, consumer computers instead of traditional architecture that relied on expensive servers with limited distribution.

Correct patent analysis must start with an accurate perception of the actual invention. Bright Data invented a new type of proxy network using low-cost consumer computers as proxies. That breakthrough eliminated the dependence on high-cost servers as exit proxies. Bright Data's unconventional use of consumer computer hardware as claimed minimizes the capital investment cost while expanding geographic availability. The inventors developed a new network architecture that made this novel proxy network a reality, which in turn gave rise to

---

[1] Based on this Court's guidance, this Reply responds to specific points raised in Appellees' Brief. Failure to re-raise or repeat an argument set forth in the Opening Brief should not be interpreted as waiver.

1

a billion-dollar company. But neither Appellees nor the PTAB recognize this "aha moment"- instead they focus only on implementation details using HTTP software protocol and ignore the fact that the disputed claim terms refer to computer hardware. The PTAB's fundamental disconnect in its claim construction analysis plagues all issues on appeal.

The Opening Brief explained that there are three primary disputes over claim construction.

First, Bright Data's hardware-based constructions properly differentiate the disputed claim terms "client device" and "second server." In fact, there is prosecution history disclaimer made in response to prior IPR petitions that limits the meaning of "client device" to only hardware that constitutes a "consumer computer" and makes clear that a "server" is not the same type of hardware. Appellees provide no response on this dispositive point. That, alone, requires reversal. Only Bright Data's constructions are consistent with the intrinsic evidence.

Second, the PTAB's role-based HTTP software constructions only differentiate the disputed claim terms insofar as a "client device" must be "operating in the role of a client" and a "second server" must be "operating in the role of a server." Bright Data's Opening Brief explained that "operating in the role

of a client" means sending requests and receiving responses; and it also explained that "operating in the role of a server" means receiving requests and sending responses. There is no dispute about what these client/server roles mean, as they are found in RFC 2616, the standard for HTTP software. Because the PTAB's role-based constructions directly contradict the intrinsic evidence, including the express claim language, they cannot be correct.

Third, the PTAB eliminated any differentiation for the claim terms and found "no exclusivity" is required in its constructions. Under the PTAB's interpretation, because the claimed components need not operate exclusively in client/server roles, nothing in the PTAB's interpretation differentiates an intermediary server from an intermediary client device. In the PTAB's view, an intermediary component operating in both client/server roles, would meet both constructions. The PTAB's error is readily shown by the fact that it fails to distinguish between the traditional commercial proxy server architecture prior art in Figure 1 versus the proxy client device (consumer computer) invention in Figure 3. Since the PTAB's interpretation directly contradicts the intrinsic evidence, it cannot be correct.

The claim construction disputes directly relate to the PTAB's invalidity determinations. But the invalidity rulings would have to be reversed in any event. The reason is simple and straightforward: under either set of constructions, none of

the prior art references discloses the specific **server ↔ client device ↔ server** architecture in which the claims operate.

Lacking any substantive response to many of Bright Data's arguments, Appellees' Brief attempts obfuscation, hoping for affirmance by making the issues appear complicated and swerving to highlight distractions from district court litigation that have no judicial impact on this Court's *de novo* review of claim construction. The district court's claim construction analysis is not part of this appeal, and it was a complicated process with three separate claim construction orders on the '319 and '510 Patents, as well as a jury verdict of validity over some of the same art on which the PTAB found invalidity. Appellees cannot explain this contradiction, and their entire district court discussion is ultimately a red herring. Appellees also interpose the distraction of multiple "waiver" arguments that, as this Reply Brief will explain, the record conclusively contradicts. And this brief also addresses the scant argument points Appellees offer on the sole focus of this appeal: the PTAB's final written decisions. The PTAB's analysis is unsupportable; Appellees' contentions are incorrect; and the decisions should be reversed.

## II.  BRIGHT DATA'S CONSTRUCTIONS PROPERLY DIFFERENTIATE THE DISPUTED TERMS AS DIFFERENT TYPES OF HARDWARE

Bright Data's constructions of "client device" as a "consumer computer" (or "computer of a consumer" as set forth in the lexicography of the patent

specification) and "server" as the commercial networking equipment that was

known as a "server that is not a client device" are consistent with the intrinsic

evidence.

### A. APPELLEES CONCEDE THAT THE PATENTEE DEFINED THE DISPUTED TERMS IN RESPONSE TO PRIOR IPR PETITIONS— THIS ALONE IS DISPOSITIVE OF THE CLAIM CONSTRUCTION ISSUES

Bright Data explained how, in response to prior IPR petitions, the patentee

expressly defined a "client device" as a "consumer computer" and confirmed a

"server" is different hardware from a consumer computer. Opening Br. 21, 30-32.

Thus, even were these terms otherwise capable of broader construction, the

patentee disclaimed any scope of "client device" beyond consumer computer

hardware. *Id.* This Court has held that such statements in response to IPR petitions

are limiting in claim construction. *Aylus Networks, Inc.*, 856 F.3d 1353, 1359-1361

(Fed. Cir. 2017); *Krippelz v. Ford Motor Co.*, 667 F.3d 1261, 1266 (Fed. Cir.

2012); *Cuozzo Speed Technologies, LLC v. Lee*, 136 S. Ct. 2131, 195 L. Ed. 2d 423

(2016). Appellees have no response to this express disclaimer and fail even to

address the cases Bright Data cited. *See* Responsive Br. 34-37.[2] The PTAB's

constructions do not account for this disclaimer and therefore cannot be correct.

For this reason alone, the final written decisions must be reversed and claim

constructions adopted consistent with this prosecution history.

### B. THE SPECIFICATION SETS FORTH CLEAR LEXICOGRAPHY FOR "CLIENT DEVICE" AS A "COMPUTER OF A CONSUMER"

Bright Data explained that lexicography in the specification governs the

definition of the claim term "client device." Opening Br. 24-25. This lexicography

is present both in the specification and the prosecution history. *Id;* Opening Br. 30-

32 (explaining the patentee's statements in response to previous IPR petitions

unambiguously define the term "client device" as "consumer computer").

Although a client device was used in prior art peer-to-peer systems as shown

in FIG. 2 of the specification, the prior art does not disclose the non-conventional

---

[2] Should Appellees later argue waiver because this express disclaimer was not considered by the PTAB, they would be incorrect. *See, e.g., Uniloc 2017 LLC v. Netflix, Inc.,*No. 21-2085, *2022 U.S. App. LEXIS 34595, *7* (Fed. Cir. 2022)("[O]ur forfeiture doctrine does not 'preclude a party from proffering additional or new supporting arguments, based on evidence of record, for its claim construction.'")(citing *Interactive Gift Exp., Inv. v. Compuserve Inc*., 256 F.3d 1323, 1347 (Fed. Cir. 2001)); *see also Seabed Geosolutions (US) Inc. v. Magseis FF LLC*, 8 F.4th 1285, 1289 (Fed. Cir. 2021) ("The doctrine of waiver does not preclude a party from supporting its original claim construction with new citations to intrinsic evidence of record.").

use of a client device as recited in the claims, including specifically the use of a client device located between two servers.

The specification's exemplary client device 60 of FIG. 2 is disclosed as a type of hardware. The inventive client device claimed in the Challenged Patents is the same type of hardware, but configured to operate in a specific way (*e.g.*, as an "agent") in a specific **server ↔ client device ↔ server** architecture.

The original prosecution histories also stated that a person ordinarily skilled in the art ("POSA") would have understood that client devices are "typically consumer owned and operated". Opening Br. 28 (citing Appx3410). Bright Data's construction is also consistent with the extrinsic evidence defining "consumer." Opening Br. 25, note 22.

Appellees point to statements in the specification describing a "consumer of content" as opposed to a "broadcaster of content," but these statements confirm again that client devices are different types of hardware than servers. *Contra* Responsive Br. 29. A client device is a type of hardware used by an individual person, *i.e.*, a consumer, for consuming content, as opposed to server hardware used for broadcasting content to a large number of consumers.

7

## C. A POSA WOULD HAVE UNDERSTOOD THAT SERVER HARDWARE IS DIFFERENT FROM CONSUMER COMPUTER HARDWARE

There is no dispute that a POSA would have known what a server hardware component is. Appellees themselves characterized server hardware components as "network servers", "a specialized data-center class device", "higher-powered devices (such as data center servers)" (Appx38994-38995, Appx46059-46060, Appx64071, Appx71096-71097); "dedicated server hardware" (Appx39026, Appx64105); and further admitted that a POSA would have been aware, in 2009, of equipment commonly used as "servers", such as a "133-MHz SGI workstation running Irix 5.3 and an Apache web server". *See* Appx38995 (citing Appx2407), Appx46060 (same), Appx64071 (same), Appx71097 (same). If a POSA was tasked with buying a server for a network, and that person bought a consumer computer (*e.g.*, laptop), then that person would have failed the task and likely been fired. *See* Appx39752(47:13-17).[3]

---

[3] Appellees cite an argument in underlying briefing regarding the boundaries of Bright Data's hardware-based constructions and alleged indefiniteness. Responsive Br. 41 (citing Appx39580-39583 and Appx39585-39587). This citation constitutes improper incorporation by reference of seven pages of reply argument and over 1,100 words. *Microsoft Corp. v. DataTern, Inc*., 755 F.3d 899, 910 (Fed. Cir. 2014). Notably, the PTAB did not address this cited argument in its final written decision(s). Moreover, the cited argument did not address the correct standard for indefiniteness. To the extent the cited argument is considered, Bright Data respectfully refers this Court to Bright Data's sur-reply argument. Appx39627-39631.

### D. A COMPARISON OF FIG. 1 AND FIG. 3 OF THE SPECIFICATION REQUIRES HARDWARE-BASED CONSTRUCTIONS TO DIFFERENTIATE AN INTERMEDIARY CLIENT DEVICE AND AN INTERMEDIARY SERVER

Appellees' contention that there are "no hardware-based distinctions" in the specification overlooks the discussion of the cost and limited distribution of server hardware and the definition in the patent of client device as hardware, *i.e.,* a "computer of a consumer." Opening Br. 10-12 and 37-39. Appellees also fail to address Bright Data's arguments for hardware-based distinctions based on a comparison of FIG. 1 and FIG. 3 of the Challenged Patents. Opening Br. 6-7, 33-34, and 49-51. These figures alone show a hardware-based distinction for the disputed terms.

FIG. 1 discloses fetching content using client device 16 ↔ proxy server 6 ↔ web server 32, which corresponds to a client device ↔ server ↔ server architecture. The intermediary is proxy server 6, which is a server hardware component. **But according to the PTAB, proxy server 6 would meet both constructions because proxy server 6 operates in both client/server roles.** As shown in the graphic below, proxy server 6 operates in the role of a server (by receiving requests/sending responses to client device 16) and operates in the role of a client (by sending requests/receiving responses from web server 32).

9



**FIG. 1**

FIG. 3 discloses fetching content using client 102 ↔ agent 122 ↔ web server 152, which corresponds to a client device ↔ client device ↔ server architecture. The intermediary is agent 122, which is a client device hardware component. **But according to the PTAB, agent 122 would meet both constructions because agent 122 operates in both client/server roles.** As shown in the graphic below, agent 122 operates in the role of a server (by receiving

10

requests/sending responses to client 102) and operates in the role of a client (by

sending requests/receiving responses from web server 152).



**FIG. 3**

The PTAB's role-based constructions fail to differentiate proxy server 6 of

FIG. 1 and agent 122 of FIG. 3. The PTAB's constructions cannot be correct. There

is necessarily a difference between using an intermediary **server** versus an

intermediary **client device**.

11

### 1. Client 102 and agent 122 of FIG. 3 are the same type of hardware components.

Appellees admit that client 102 and agent 122 of FIG. 3 are structurally identical "communication devices", *i.e.*, client device hardware components, that operate in different roles. Responsive Br. 6 and 32. For example, as shown in FIG. 3, client 102 may operate in the "client" role and agent 122 may operate in the "agent" role as those roles are defined in the common specification. Appx1160(4:44-50).

It was known in the art to use client 102 with an intermediary proxy server, such as proxy server 6 of FIG. 1. Opening Br. 13-14. The specification expressly states that a server "is placed between one or more clients" (Appx1159(2:10-11)) which informs a POSA that a proxy server can be placed between client 102 and agent 122 of FIG. 3. *Id.; see also* Opening Br. 52-53, note 35. The specification also expressly states that the exemplary illustration of communication network 100 of FIG. 3 is not intended to be limited by the current description. Appx1161(5:41-48). Bright Data's IPR expert, Dr. Williams, testified that "a POSA would understand that other network elements can be present within the diagram of Figure 3… And a well understood network element would be a proxy server, as is clearly disclosed in Figure 1, that a proxy server can be inserted into a network" and that is consistent with the annotated FIG. 3 provided by Dr. Williams.

12

Appx42630-42632(112:4-114:2).[4] This resulting architecture shows client 102 ↔ proxy server 6 ↔ agent 122 ↔ web server 152, where proxy server 6 corresponds to the "second server" (server hardware) and agent 122 corresponds to the "client device" (consumer computer hardware). Opening Br. 14.



**FIG. 3**

---

[4] For example, Dr. Williams testified that a router was a well-known network element and though not expressly shown in FIG. 3, a POSA would have understood that a router could be used in the communication network 100 of FIG. 3. Appx5462-5464(46:10-48:22).

Dr. Williams' testimony is supported by the intrinsic evidence including the specification, discussed above, and Bright Data's prosecution history statements that: "the claims disclose a **server** receiving information from another **server** via a **client device**." Appx3208 (emphasis added).

It is additionally noted that the defendants in the Oxylabs Litigation, including three appellees here, made this same written description challenge regarding the disclosed architecture of the claims and client 102 of FIG. 3, which the jury rejected. Appx6335.

### 2. *Client 102 of FIG. 3 is not a server hardware component.*

Client devices and servers are different types of hardware, which has been Bright Data's position since its first claim construction argument where it asked for the same construction of "client device" that it seeks here: "consumer computer." Appellees' Responsive Brief repeatedly refers to an annotated figure in district court litigation briefing and mischaracterize FIG. 3 by taking the annotation out of context; the annotation of the "second server" in that figure was to indicate that a server could be added to or replace client device 102 and Appellees' suggestion that Bright Data asserted that claim device 102 itself was a server is incorrect. *See* Opening Br. 52-53, note 35; Responsive Br. 5 and 25-26. Regardless, an annotated figure in district court litigation briefing is not part of the intrinsic record. Moreover, there is no judicial estoppel here.

14

Appellees ignore that, in that same briefing, Bright Data explained that the annotations were only used to illustrate the lines of communication showing the steps performed by the claimed "client device." Appx6301 (Sur-reply to Opposition); Appx18952 (Reply to Brief).[5] Bright Data unambiguously stated that "a POSA would understand client 102 and agent 122 to both be client devices operating as a "client" and an "agent" respectively." Appx9347 (cited Brief); Appx17940-17941(¶8) (cited Declaration). Thus, client 102 of FIG. 3 is not a server hardware component. Also, client 102 of FIG. 3 never operates in the role of a server because it never receives requests or sends responses. *Contra* Responsive Br. 27 (arguing that the only device that could correspond to the "second server" is client 102 of FIG. 3).

Appellees also ignore that, in that same briefing, Bright Data proposed claim constructions distinguishing client devices and servers as different types of hardware and included supporting citations to the common specification. Appx2873-2875, Appx2883 (cited Opposition); Appx6298 (Sur-reply to Opposition); Appx9346, Appx9349 (cited Brief), Appx17940 (cited Declaration).

---

[5] The PTAB ignored this explanation, even though the PTAB noted that Bright Data made clear its position that client 102 and agent 122 are both client devices. Appx22(note 9). And the PTAB acknowledged that Bright Data's litigation expert, Dr. Rhyne, clarified his testimony that client 102 and agent 122 are both client devices. Appx172(note 6), Appx344(note 12).

Bright Data expressly stated that the **server ↔ client device ↔ server** architecture is not a computer ↔ computer ↔ computer architecture because the claims do not recite the use of generic computers sending/receiving information. Appx2882-2883 (cited Opposition); Appx6294, Appx6297 (Sur-reply to Opposition); Appx9348-9349 (cited Brief); Appx18951-18952 (Reply to Brief); *see also* Appx6326-6327 (district court finding that "[if] the claimed methods in this case were simply the receipt and forwarding of information over the Internet, [defendants] might have a compelling argument. However, it is the use of non-traditional client devices that transforms the Asserted Claims into non-abstract subject matter.").

Furthermore, the district court litigation briefing was not limited to the '319 and '510 Patents on appeal here, but also involved U.S. Patent No. 10,469,614 (Appx18549-18776), all which claim methods that operate in the same non-traditional **server ↔ client device ↔ server** architecture. The non-traditional architecture is disclosed in the specification of the '319 and '510 Patents and expressly shown in FIG. 13 of the '614 Patent. This FIG. 13 (reproduced below) shows client device 132 used with proxy server 131. *See also* Appx6301 (explaining a proxy server can be used as an intermediary between two client devices). Thus, in context, the annotated figure relates to Bright Data's discussion of the three asserted patents for purposes of the Oxylabs Litigation.

16

**Fig. 13 of U.S. Patent No. 10,469,614:**



FIG. 13

Appx18580

In another red herring, Appellees assert that the '614 Patent supports the PTAB's role-based constructions, despite the fact that the '614 Patent is not at issue here.

Appellees also are wrong. The '614 Patent discloses hardware-based distinctions for the claim terms "client device" and "server". *Contra* Responsive Br. 33-34. Appellees focus on the "roles" that devices can perform as

17

interchangeable, but the client/server "role" does not define the type of hardware.[6]

The inventors figured out that instead of server hardware, they could use a client

device that at times operate in the role of a server *without actually being a server*,

thereby saving money and creating a much more distributed network. Further,

during prosecution of the '614 Patent, the patentee unambiguously differentiated

client devices and servers as different types of hardware: "the Action equates the

various recited steps to action performed by the server device 106, which is clearly

a server device and NOT a client device." Appx9352-9353 (emphasis in original).

The patentee made clear that a server is not a client device, regardless of the roles

being performed. The defendants in the Oxylabs litigation, including three

appellees here, conceded this statement amounted to prosecution history

disclaimer. Appx18953.

### E. THE SPECIFICATION TEACHES AWAY FROM THE USE OF A PROXY SERVER AS AN EXIT-NODE TO COMMUNICATE WITH A WEB SERVER

In FIG. 1, proxy server 6 is the "exit-node" that communicates with the web

server. Opening Br. 13 and 33-34. The problems with the prior art proxy server

---

[6] An intermediary client device "serving as a server," *i.e.*, operating in the role of a server, does not change the underlying hardware. *Contra* Responsive Br. 33. Similarly, an intermediary server that "may equally function as a client," *i.e.*, operating in the role of a client, does not change the underlying hardware. *Contra* Responsive Br. 33.

solution of FIG. 1 are specifically directed to using a proxy server as an exit-node. *See, e.g.*, Appx1159(2:33-38) ("There have been commercial companies, such as Akamai, that have deployed such proxies locally around the world, and that are serving a select small group of sites on the Internet. If all sites on the Web were to be solved with such a solution, the capital investment would be in the range of billions of dollars."). Therefore, the specification teaches away from the use of an intermediary proxy server as an exit-node to communicate with web servers.

In FIG. 3, agent 122 is the "exit-node" that communicates with the web server. *Id.* There is no teaching away from using a proxy server between client 102 and agent 122 of FIG. 3, where agent 122 is the exit-node that communicates with the web server. *Contra* Responsive Br. 28.[7] As noted above, the specification expressly states that a server "is placed between one or more clients" (Appx1159(2:10-11)) which can include between client 102 and agent 122. Opening Br. 52-53, note 35.

---

[7] There was no concession by Bright Data's IPR expert regarding the architecture of FIG. 3. *Contra* Responsive Br. 28. Dr. Williams expressly testified that a POSA would have known other types of servers can be added to communication network 100. Appx5462-5464(46:10-48:22); *see also* Appx42630-42632 (112:4-114:2). The specification informs a POSA that the communication network 100 shown in FIG. 3 is not intended to be limited and may include other known components, including a proxy server. *See infra,* section III.D.1.

The claimed methods were invented to improve latency in fetching content from web servers at low cost. Opening Br. 10-12 and 37-39. This architecture significantly reduces the number of intermediary proxy servers needed to serve as "gateways" thereby lowering costs. This architecture allows for many millions of intermediary client devices to communicate with web servers located around the world.

### F. THE ORIGINAL PROSECUTION HISTORIES MAKE CLEAR THAT CLIENT DEVICES AND SERVERS ARE DIFFERENT TYPES OF HARDWARE

The original prosecution histories support Bright Data's hardware-based constructions and Appellees fail to respond to many of Bright Data's cited prosecution history statements. Opening Br. 26-30; Responsive Br. 34-37. Appellees raise five arguments regarding original prosecution. All are incorrect.

First, regarding the predecessor '936 Patent, the patentee's statements addressed the attributes of "client devices" as known in the art, including for example client 105 of the Garcia reference. *Contra* Responsive Br. 35. The patentee explained why it was unconventional to use client devices as claimed. The patentee explained that using an intermediary **server** as in Garcia is not the same

as using an intermediary **client device** in the '936 Patent because they are different types of hardware.[8]

Second, regarding the predecessor '936 Patent, the inventors figured out how to add server functionality to consumer computer hardware. A client device configured to also operate as a server does not change the fact that a client device is a consumer computer, a type of hardware component. *Contra* Responsive Br. 18, 31, and 36.[9] There is no dispute that an intermediary client device as claimed can operate in both client/server roles.

Third, the Harrow reference, cited as prior art against the predecessor '936 Patent, does not define "client device" in the context of the Challenged Patents. *Contra* Responsive Br. 31-32. And Harrow explicitly states the cited definition including servers as a type of "client" is limited to "the context of this document," *i.e.*, the context of Harrow. Appx16828(¶57).

---

[8] The intermediaries are necessarily distinguished in terms of hardware as they would both perform the same client/server roles. *Contra* Responsive Br. 36.

[9] The patentee's statement that the "client device" of the '936 Patent operates as both a cache server and a client reinforces Bright Data's hardware-based constructions because the "client device" of the '936 Patent is consumer computer hardware that includes server functionality. The common specification discloses that a client device may fetch fresh content directly from a web server and may also cache that content in different embodiments, which are unrelated to the claims at issue in this appeal.

21

Fourth, regarding the '319 Patent, the patentee's statements expressly refer to client devices and servers, which are arranged in a specific way and cannot be reduced to computer ↔ computer ↔ computer architecture. *Contra* Responsive Br. 37. Because the PTAB's purely role-based constructions refer to generic computers, they cannot be correct.

Fifth, regarding the '342 and '344 Patents, the examiner twice reviewed the Crowds reference and found that Crowds does not invalidate the claims. There was no error by the examiner at least because Crowds does not disclose the nontraditional architecture of the claims. The same examiner, who reviewed all related patents cited and discussed in the briefing, necessarily understood that the claimed components refer to different types of hardware. *See, e.g., PowerOasis, Inc. v. TMobile USA, Inc.,* 522 F.3d 1299, 1304 (Fed. Cir. 2008) (stating that PTO examiners are "assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents.") (*quoting Am. Hoist & Derrick Co. v. Sonra & Sons, Inc.,* 725 F.2d 1350, 1359 (Fed. Cir. 1984) (overruled on other grounds))).

### III.   THE PTAB'S CONSTRUCTIONS REQUIRE A CLIENT DEVICE TO "OPERATE IN THE ROLE OF A CLIENT" AND A SECOND SERVER TO "OPERATE IN THE ROLE OF A SERVER" CONTRADICTING THE EXPRESS CLAIM LANGUAGE

The PTAB's purely role-based constructions only differentiate the claim terms insofar as a "client device" must be "operating in the role of a client" and a "second server" must be "operating in the role of a server."[10] The PTAB's constructions cannot be correct at least because they directly contradict the express claim language. *See, e.g.,* Opening Br. 46-48.

The below graphics show the steps performed by the intermediary "first client device" in each limitation of exemplary claim 1 of the '319 Patent and further show how the intermediary operates in both client/server roles during the performance of exemplary claim 1.

For limitation 1[a], the first client device is receiving a request from the second server and therefore, the client device is operating in the role of a **server**.

---

[10] Unlike the district court, the PTAB gave no weight to the recitation of "communication device" in its construction for "client device". Opening Br. 45. Also, unlike the district court, the PTAB gave no weight to the recitation of "server" in its construction for "second server" finding that any device that operates in the role of a server is a server. *Id.* at 45-46.



For limitation 1[b], the first client device is sending a request to the first server, *i.e.*, the web server, and therefore, the first client device is operating in the role of a **client**.



For limitation 1[c], the first client device is receiving a response from the first server, *i.e.*, the web server, and therefore, the first client device is operating in the role of a **client**.



For limitation 1[d], the first client device is sending a response to the second server and therefore, the first client device is operating in the role of a **server**.



The claimed "first client device" is not operating in the role of a client, as required by the PTAB's construction, during limitations 1[d] of the '342 Patent, limitations 1[a] and 1[d] of the '319 Patent, limitation 1[d] of the '510 Patent, and limitations 1[b] and 1[e] of the '344 Patent. The PTAB's construction is incorrect because the claimed client device cannot meet the PTAB's construction for "client device" during these limitations. Opening Br. 47-48.[11]

The claimed "second server" is not operating in the role of a server, as required by the PTAB's construction, during any limitations of the independent claims. Opening Br. 48, note 31. The PTAB's construction is therefore incorrect

---

[11] The claimed "client device" meets the PTAB's construction for "second server" during these limitations because the claimed "client device" is operating in the role of a server by receiving requests/sending responses. This further shows that the PTAB's constructions cannot be correct.

because the claimed second server does not meet the PTAB's construction for "second server" during any limitation.[12]

### A. Appellees mischaracterize Bright Data's baseball analogy.

Bright Data proffered a baseball analogy where a pitcher performs the role of "throwing a ball" similar to sending a request and a catcher performs the role of "catching a ball" similar to receiving a request. Opening Br. 48. When the catcher throws the ball back to pitcher, the catcher would meet the construction for "pitcher" and vice versa. *Id.* Just as role-based constructions based on throwing/catching a ball are not appropriate for baseball players, role-based constructions based on sending/receiving a request are not appropriate for the disputed terms.

Appellees mischaracterize this baseball analogy and do not substantively address the fundamental error in the PTAB's purely role-based constructions. Responsive Br. 38-39. Instead, Appellees reframe the argument as whether or not the claimed components are physically separate from one another. *Id.* To be clear,

---

[12] The claimed "second server" meets the PTAB's construction for "client device" during limitations 1[d] of the '342 Patent, limitations 1[a] and 1[d] of the '319 Patent, limitation 1[d] of the '510 Patent, and limitations 1[b], 1[e], 24[a], 24[d], and 24[e] of the '344 Patent. During these limitations, the claimed "second server" is operating in the role of a client by sending requests/receiving responses. This further shows that the PTAB's constructions cannot be correct.

there is no dispute that the claimed "client device" and "second server" are physically separate components.

## IV.  THE PTAB FINDS "NO EXCLUSIVITY" REQUIRED IN ITS CONSTRUCTIONS, BUT IGNORES THAT WOULD MEAN ITS CONSTRUCTIONS DO NOT DIFFERENTIATE BETWEEN AN INTERMEDIARY CLIENT DEVICE AND AN INTERMEDIARY SERVER

The PTAB found that a component need not operate "exclusively" in the role of a client in order to be a "client device." *See* Responsive Br. 39-40. Similarly, the PTAB found that a component need not operate "exclusively" in the role of a server in order to be a "second server." *Id.* However, the PTAB's finding of "no exclusivity" leads to a nonsensical result that directly contradicts the express claim language reciting the use of a "client device" communicating with a "second server." The claim language does not refer to generic computers communicating with each other. The claim language instead refers to specific hardware. The PTAB therefore contradicts the claim language and also contradicts FIGS. 1 and 3 of the specification. *See infra,* section III (explaining contradiction with the claim language) and section II.D (explaining that FIGS. 1 and 3 distinguish an intermediary client device from an intermediary server).

Appellees argue that the PTAB's constructions require two physically separate components, but this point is not disputed. *See* Responsive Br. 40. Bright Data explained that the PTAB's finding of "no exclusivity" renders the

27

**constructions** indistinguishable because under the PTAB's constructions, there is nothing to differentiate an intermediary **client device** from an intermediary **server**. *See infra,* section III (explaining the only differentiation in the PTAB's constructions is whether the component is operating in the role of a client versus operating in the role of a server). Under the PTAB's constructions, any intermediary would be both a client device and a server, which ignores the significance of the invention.

### A. Appellees mischaracterize the district court's constructions for support.

Appellees argue that the district court's claim constructions support the PTAB's role-based constructions, but that is incorrect (it is also legally irrelevant because the district court's constructions are not on appeal and because this Court performs claim construction *de novo*).

In contrast to the PTAB, the district court did not adopt ***purely*** role-based constructions. *Contra* Responsive Br. 14, 16, and 41. The district court acknowledged hardware-based distinctions in its constructions reciting "communication device" versus "server." Appx2946, Appx2948, Appx3011, Appx6592, Appx6599. Moreover, the district court expressly rejected ***purely*** role-based constructions in the NetNut Litigation. Appx6586, Appx6593-6594,

Appx6599. The PTAB's constructions do not comport with the district court's constructions.

The fact that the district court recognized that the claimed client device can operate in both client/server roles does not change the hardware. For example, the district court acknowledged that a client device (such as agent 122 of FIG. 3) can also operate as a server. Appx3010 ("[t]he patents do not include servers as a type of 'communication device,' but that is not sufficient to construe 'client device' as unable to **act as a server** in all cases")(emphasis added). Exemplary agent 122 of FIG. 3 is an intermediary and therefore operates in both client/server roles. The PTAB failed to distinguish operating in the role of a server and being a server.

The district court expressly stated that a server is not a type of communication device, *i.e.*, client device. *Id.* The PTAB failed to recognize that a server is not a client device. Furthermore, the PTAB failed to recognize that a client device is not a server.[13]

---

[13] Appellees mischaracterize the district court's pre-trial order precluding Bright Data's litigation expert from testifying that "a client device cannot be a server." Responsive Br. 11. The district court did not address the accuracy of this testimony, but rather found that the expert testified in deposition that a "client device is specifically not a server," but did not do so in his report; therefore, the expert was precluded from testifying at trial beyond the scope of his report. Appx6308 (citing Appx41946(64:8-12)).

In contrast to Appellees' mischaracterizations of alleged support, the district court in the Oxylabs Litigation necessarily understood that client devices and servers are different types of hardware as evidenced by the district court denying Oxylabs' motion for ineligibility of the '319 and '510 Patents (Appx6319-6330)[14] and later, denying Oxylabs' motion for summary judgment of invalidity based on alleged anticipation by Crowds. Appx69372-69405, Appx6306.

Moreover, the jury in the Oxylabs Litigation necessarily understood that client devices and servers are different types of hardware upon entering a multi-million-dollar verdict of willful infringement and no invalidity of the '319 and '510 Patents based on alleged anticipation by Crowds. Appx6334-6337.

## V.    THE PRIOR ART REFERENCES DO NOT DISCLOSE THE SPECIFIC ARCHITECTURE OF THE CLAIMS UNDER ANY SET OF CONSTRUCTIONS

Appellees make the same two arguments as to Crowds, Border, MorphMix, and Plamondon regarding: (1) no exclusivity in the PTAB's purely role-based

---

[14] Appx6326 (district court recognizing that although the claims use generic computers and common Internet protocols, it is the network itself that is the claimed improvement); Appx6327 (district court emphasizing the use of "non-traditional client devices"); Appx6327 (district court emphasizing "the network architecture as a whole"); Appx6328 (district court recognizing "the use of a non-traditional network structure with a client device acting as a proxy"); Appx6328 (district court acknowledging technological solution "by routing server requests and receipts through non-traditional client devices"); Appx6329 (district court recognizing the Asserted Claims are not abstract because they make use of general-purpose computers).

constructions and (2) no support for Bright Data's hardware-based constructions. Responsive Br. 45-46, 49-50, 53, 55.

Appellees do not address the fact that the PTAB did not consistently analyze the prior art components in each prior art reference, showing clear error. Opening Br. 55-57 (Crowds), 58-60 (Border), 61-62 (MorphMix), 63-64 (Plamondon). Further, the PTAB's anticipation findings demonstrate that the PTAB clearly erred in equating the following architectures:

- client device ↔ client device ↔ server architecture of Crowds;

- server ↔ server ↔ server architecture of Border; and

- server↔ client device ↔ server architecture of the '319 and '510 Patents.

*See, e.g.,* Appx710, Appx798-799.

Appellees appear to concede that none of Crowds, Border, or MorphMix invalidate the claims under Bright Data's hardware-based constructions. With respect to Plamondon, Appellees argue anticipation under Bright Data's hardware-based constructions. Responsive Br. 55-58. But Plamondon does not disclose the claimed components **as arranged in the claim** as required for anticipation. Opening Br. 64-66. Appellees independently address the claimed components without consideration of the network architecture as a whole. Plamondon does not

31

contemplate the specific **server ↔ client device ↔ server** architecture in which the claims operate. A POSA would not at once envisage the specific architecture.[15] Opening Br. 64-66. Appellees' responsive arguments fail for at least three reasons.

First, Appellees mischaracterize the disclosure of Plamondon as a mere seven-item list for its "client 102" and "appliance 200". Responsive Br. 57. FIG. 1C of Plamondon discloses client 102 ↔ appliance 200 ↔ server 106. Opening Br. 62. Plamondon states that client 102, appliance 200, and server 106 may be implemented on any type and form of computing device 100. Appx9555(¶229). Plamondon discloses an open-ended list of various examples of computing device 100. Appx9557(¶238). Therefore, to anticipate the claims, a POSA would need to implement client 102 on a server AND implement appliance 200 on a consumer computer AND implement server 106 on a server. Plamondon does not

---

[15] The "at once envisage" language is not limited to chemical inventions as Appellees seem to allege. *See* Responsive Br. 57. For example, in the context of real time video conferencing systems, this Court applied the same anticipation standard: "a prior art reference must provide every element of the claimed invention arranged as in the claim in order to anticipate … [A] claim does not need to "expressly spell out" all limitations combined as in the claim if a [POSA], reading the reference, would "at once envisage" the arrangement or combination." *Microsoft Corp. v. Biscotti, Inc.*, 878 F.3d 1052, 1069 (Fed. Cir. 2017) (citations omitted). The same standard has also been applied in the context of marine seismic survey systems. *See, e.g., In re WesternGeco LLC*, 889 F.3d 1308, 1330 (Fed. Cir. 2018).

contemplate these specific implementation choices. No guidance or disclosure in Plamondon would inform a POSA to do so.

Second, Plamondon discloses that in some embodiments, client 102 has the capacity to function as an application server. Appx9553(¶210). Operating as a server does not mean that client 102 is implemented on server hardware. Moreover, there is no disclosure of client 102 operating as a server AND fetching content via appliance 200 from server 106. Opening Br. 64. In the context of FIG. 1C, Plamondon does not contemplate implementing client 102 on server hardware. Instead, Plamondon expressly discloses client 102 of FIG. 1C as a desktop computer.

Third, a POSA would not consider implementing appliance 200 on a consumer computer. Opening Br. 66. Plamondon does not disclose that the exemplary smartphones have sufficient processor power and memory capacity to perform the operations of **appliance 200** as opposed to client 102 or server 106. *Contra* Responsive Br. 58. In the embodiment of FIG. 1C, appliance 200 is designed to perform "WAN optimization techniques" and is disclosed specifically as a "Citrix WanScaler appliance". Appx9555(¶228). Plamondon does not equate a Citrix WanScaler appliance with, for example, a Treo smartphone. *Contra* Responsive Br. 58. As of the October 8, 2009 priority date of the Challenged

33

Patents, a POSA would not think to implement appliance 200 on, for example, a

Treo smartphone.

## VI.    BRIGHT DATA ESTABLISHED NEXUS AND PROPERLY MAPPED ITS RESIDENTIAL PROXY SERVICE TO THE CLAIMS

Bright Data explained that the claimed use of consumer computers as

intermediary proxies led to its dominance in the proxy services market. Opening

Br. 15-16. The claimed use of consumer computers is referred to as a "residential

proxy service" because a consumer computer typically uses a residential IP address

as opposed to a commercial IP address. Opening Br. 12. A person skilled in the art

would have understood that a residential proxy service (using consumer computers

as claimed) is distinguished from other types of proxy services that only use, for

example, prior art proxy servers.

Bright Data properly mapped its residential proxy service to the claims

under Bright Data's hardware-based constructions. Opening Br. 66-67.

Additionally, Bright Data's IPR expert testified that, to the extent the PTAB

improperly applies its constructions, then Bright Data's residential proxy service

would still practice the claims. Appx5448-5452(32:13-36:12); *contra* Responsive

Br. 38.

## VII.  <u>CONCLUSION</u>

The PTAB's constructions should be rejected and Bright Data's proposed

constructions should be adopted. The PTAB's final written decisions should be

vacated and the underlying IPRs remanded to the PTAB with instructions for the

PTAB to enter a finding of no invalidity, or alternatively, for the PTAB to

reconsider the prior art as well as the evidence of secondary considerations of non-

obviousness in light of the correct constructions.

<div style="margin-left:40%">

*/s/ Robert M. Harkins, Jr.*
ROBERT M. HARKINS, JR.
CHERIAN LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704
(510) 944-0187
bobh@cherianllp.com

KORULA T. CHERIAN
CHERIAN LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704
(510) 944-0190
sunnyc@cherianllp.com

THOMAS M. DUNHAM
CHERIAN LLP
1901 L Street NW, Suite 700
Washington, DC 20036
(202) 838-1567
tomd@cherianllp.com

</div>

RONALD R. WIELKOPOLSKI
CHERIAN LLP
1901 L Street NW, Suite 700
Washington, DC 20036
(202) 838-1568
ronw@cherianllp.com

*Counsel for Appellant*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:**  23-2144, -2145, -2146, -2147, -2414, -2415, -2442, -2443

**Short Case Caption:**  Bright Data Ltd. v. Code200, UAB

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑    the filing has been prepared using a proportionally-spaced typeface and includes  6,916  words.

☐    the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐    the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 06/05/2024

Signature:  /s/ Robert M. Harkins, Jr.

Name:  Robert M. Harkins, Jr.

Save for Filing