**2023-2144, 2023-2145, 2023-2146, 2023-2147,
2023-2414, 2023-2415, 2023-2442 & 2023-2443**

# United States Court of Appeals
# for the Federal Circuit

---

BRIGHT DATA LTD.,

*Appellant,*

– v. –

CODE200, UAB, TESO LT, UAB, METACLUSTER LT, UAB, OXYSALES,
UAB, THE DATA COMPANY TECHNOLOGIES INC., MAJOR DATA UAB,
CORETECH LT, UAB,

*Appellees.*

---

*On Appeals from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in Nos. IPR2022-00103, IPR2022-
00135, IPR2022-00138, IPR2022-00353, IPR2022-00915, IPR2022-
00916, IPR2021-01492, IPR2022- 00861, IPR2021-01493 and
IPR2022-00862*

---

## COMBINED PETITION FOR PANEL REHEARING
## AND REHEARING *EN BANC*

KORULA T. CHERIAN
ROBERT M. HARKINS, JR.
CHERIAN LLP
2001 Addison Street, Suite 275
Berkeley, California 94704
(510) 944-0190
sunnyc@cherianllp.com
bobh@cherianllp.com

THOMAS M. DUNHAM
RONALD R. WIELKOPOLSKI
CHERIAN LLP
2001 L Street NW, Suite 650
Washington, DC 20036
(202) 838-1560
tomd@cherianllp.com
ronw@cherianllp.com

*Counsel for Appellant*

August 29, 2025

 COUNSEL PRESS    (800) 4-APPEAL • (384596)

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 23-2144, -2145, -2146, -2147, -2414, -2415, -2442, -2443 |
| **Short Case Caption** | Bright Data Ltd. v. Code200, UAB |
| **Filing Party/Entity** | Bright Data Ltd. |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 08/29/2025

Signature: /s/ Robert M. Harkins, Jr.

Name: Robert M. Harkins, Jr.

**FORM 9. Certificate of Interest**

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☐ None/Not Applicable |
| Bright Data Ltd. |  | IPPN Group Ltd. |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

☐    Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable          ☐ Additional pages attached

| | | |
|---|---|---|
| Elizabeth A. O'Brien, Cherian LLP, 2001 L Street NW, Suite 650, Washington, DC 20036 | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below)     ☐ No     ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable          ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

Fed. R. App. P. 40(b)(2) and Fed. Cir. R. 40(c)(1):  Statement Supporting *En Banc* Review ............................................................................................1

Fed. R. App. P. 40(b)(1)(A) and Fed. Cir. R. 40(b)(1)(E):  Points of Law or Fact Overlooked or Misapprehended by the Court.................................................2

Introduction....................................................................................................5

Background ....................................................................................................6

Argument......................................................................................................10

A.    Contrary to Precedent, the Panel Overlooked Bright Data's Prosecution Disclaimers Including in Prior IPRs Limiting the Scope of the "Client Device" and "Server" Terms. .......................................................................10

　　1.    In Prior IPRs, Bright Data Expressly Disclaimed a Role-Based Interpretation and Defined "Client Device" as Consumer Computer, a Type of Hardware That Differs from a Server..............10

　　2.    In Overlooking Bright Data's Clear Statements in the Prior IPRs, the Panel Failed to Follow This Court's Precedents. ..........................14

B.    The Panel Misapprehended the Prosecution History, Which Contradicts the PTAB's Constructions and Supports a Hardware-Based Distinction Between "Client Devices" and "Servers."...................................................16

　　1.    Contrary to the Panel Opinion, Bright Data Distinguished Its "Client Device" from Garcia's "Server."...........................................16

　　2.    The Panel Overlooked Prosecution History Statements Distinguishing Between "Client Device" and "Server" Hardware.....19

Conclusion....................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353 (Fed. Cir. 2017) ........... passim

*Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090 (Fed. Cir. 2013) . passim

*CUPP Computing AS v. Trend Micro Inc.*, 53 F.4th 1376 (Fed. Cir. 2022) ... passim

*Kyocera Senco Indus. Tools, Inc. v. ITC*, 22 F.4th 1369 (Fed. Cir. 2022) ..............12

*Omega Eng'g, Inc. v. Raytek Corp.,* 334 F.3d 1314 (Fed. Cir. 2003).....................10

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ............................. passim

*Roku, Inc. v. Universal Elecs., Inc.,* 2024 U.S. App. LEXIS 14723 (Fed. Cir. 2024) ....................................................................................................12

*Seabed Geosolutions (US) Inc. v. Magseis FF LLC*, 8 F.4th 1285 (Fed. Cir. 2021) ....................................................................................................12

*Uniloc 2017 LLC v. Netflix, Inc.*, No. 21-2085, 2022 U.S. App. LEXIS 34595 (Fed. Cir. 2022) .......................................................................................12

*VirnetX Inc. v. Mangrove Partners Master Fund, Ltd.,* 778 F. App'x 897 (Fed. Cir. 2019).......................................................................................................16

## Fed. R. App. P. 40(b)(2) and Fed. Cir. R. 40(c)(1): Statement Supporting *En Banc* Review

Based on my professional judgment, I believe the panel decision is contrary to the following precedents of this Court: *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353 (Fed. Cir. 2017) (precedential); *CUPP Computing AS v. Trend Micro Inc.*, 53 F.4th 1376 (Fed. Cir. 2022) (precedential); *Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090 (Fed. Cir. 2013) (precedential); and *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (precedential) (*en banc*). The full Court's consideration is necessary to secure or maintain uniformity of the Court's decisions.

Date: August 29, 2025

*/s/ Robert M. Harkins, Jr.*
ROBERT M HARKINS, JR.
CHERIAN LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704
(510) 944-0187
bobh@cherianllp.com

*Counsel for Appellant*

1

**Fed. R. App. P. 40(b)(1)(A) and Fed. Cir. R. 40(b)(1)(E):**
**Points of Law or Fact Overlooked or Misapprehended by the Court**

Prosecution history statements and disclaimer were of critical importance here, but the panel made two key errors in applying this Court's claim-construction law to the prosecution history:

1.    **IPR Disclaimer**: When a patent owner makes clear statements limiting claim scope in response to an *inter partes* review ("IPR") petition, those definitions and disclaimers ***must*** be adopted in later proceedings. *Aylus*, 856 F.3d at 1362; *CUPP*, 53 F.4th at 1383 ("[A] disclaimer in an IPR proceeding is binding in later proceedings."). The panel contradicted established precedent by failing to consider, much less adopt, such statements here. In prior IPRs of two patents at issue, Bright Data (a) ***defined*** the term "client device" as a consumer computer in contrast to the claimed "second server"; and (b) ***disclaimed*** any scope of "client device" beyond a "consumer computer" as well as any scope of "server" that could encompass "client device" hardware. The panel overlooked these clear definitional and disclaimer statements, which is erroneous and contradicts the law on claim construction. *See Aylus*, 856 F.3d at 1362; *CUPP*, 53 F.4th at 1383; *Biogen*, 713 F.3d at 1094 (The meaning of a term "must be considered in the context of all the intrinsic evidence" including the prosecution history (citing *Phillips*, 415 F.3d at 1314)). If the panel does not amend its opinion to correct this error, the Court should take up the issue *en banc* to clarify that such

2

definitional and disclaimer statements made in IPR proceedings must be considered and are binding in later proceedings, and accordingly adoption of Bright Data's claim constructions is required.

2.    **Erroneous Reading of the Original Prosecution History**: The panel misread the only prosecution history statements discussed in the opinion and ignored other important narrowing statements made during prosecution. First, the record confirms that Bright Data distinguished the claimed "client device" of the related ancestral patent from the prior art ***server*** of Garcia. But the panel incorrectly stated that Bright Data distinguished its client device from the prior art ***client device*** of Garcia, rather than the prior art ***server***. That is factually wrong and contrary to the record. By confusing what Bright Data argued regarding client device and server, the panel erroneously concluded that the prosecution history contradicted Bright Data's position. But, in reality, the prosecution history supported Bright Data's position that "client device" and "server" in the patent claims are different hardware with different attributes. Had the panel not misread the key component that Bright Data had distinguished regarding Garcia, the panel should have concluded that Bright Data's claim construction positions are correct and that the scope of the claim terms is narrower than the PTAB found. Second, the panel neglected other narrowing statements in the prosecution histories of two of the patents at issue that also should have resulted in the

panel adopting Bright Data's constructions.

## Introduction

A rehearing or rehearing *en banc* is warranted because the panel ignored Bright Data's disclaimer in earlier IPRs, contravening this Court's precedents holding that such statements must be considered and are binding in later proceedings, including the later, appealed IPRs at issue, and thereby creating a conflict between this panel's decision and other precedential decisions from this Court. *Aylus,* 856 F.3d at 1362; *CUPP*, 53 F.4th at 1383; *Biogen,* 713 F.3d at 1094; *Phillips*, 415 F.3d at 1314. The panel erroneously affirmed constructions that were disclaimed and must be rejected. And the panel appears to have misunderstood the only prosecution history expressly discussed in the panel's opinion, as the opinion includes significant mistakes of fact regarding Bright Data's statements distinguishing the prior art.

## Background

These consolidated appeals arise from final written decisions of the Patent Trial and Appeal Board ("PTAB") that invalidated claims of four Bright Data patents[1] based upon the PTAB's constructions of two claim terms – "client device" and "second server."

The common specification of the four patents explains that the prior art solution of using intermediary servers (commercial hardware) as proxies to access web servers is prohibitively expensive and impractical to deploy around the world. Appx1159 (2:24-39); *see also, e.g.,* Opening Br. 10-12, 37-39; Reply Br. 18-20. Instead of relying on expensive servers to obtain content from web servers, the inventive solution employs devices that consumers already own throughout the world (referred to as "computers of consumers" or "client devices") as proxies between servers. Moreover, this inventive solution maintains anonymity and allows for "large distribution systems without the large hardware costs." Appx1159 (2:40-41).

---

[1] U.S. Patent Nos. 11,044,342 ("'342 Patent"), 10,257,319 ("'319 Patent"), 10,484,510 ("'510 Patent"), and 11,044,344 ("'344 Patent").





The four patents recite the same "client device" and "second server" claim terms. They discuss at length the flaws in the prior art's use of intermediary servers as proxies and how the patents' inventive solution overcomes those flaws. Appx1159 (2:24-41); *see also, e.g.,* Opening Br. 6, 10-12, 37-39; Reply Br. 18-20. The prior art disclosed "client devices" (consumer computers) that make requests to intermediary "servers." But prior art client devices would **never receive requests** from and **send back responses** to a server.

A key inventive aspect of the patents is the use of specific hardware arranged in a specific way in a specific network architecture. The background of the patents states that a prior art problem is that servers are hardware devices that are (1) too expensive and (2) not located everywhere you want them to be.

7

Opening Br. 10-12, 37-39; Reply Br. 18-20; Appx1159 (2:24-39). The inventors recognized that "client devices" (*viz.* consumer computers) are (1) much cheaper and (2) ubiquitous since consumers already own them at every location. For these reasons, **the claimed system architecture using a "client device" (consumer computer *instead of* server hardware) to act as an proxy located between two servers is advantageous and had never been done before**.

Consistent with the background and specification of the patents, Bright Data consistently advocated for hardware-based constructions of the claim terms, where "client device" means a "consumer computer" and "second server" means a "server that is not a client device." *See, e.g.,* Opening Br. 4-7, 21-22. Bright Data's hardware-based constructions distinguish the claim terms as different types of hardware known to have different attributes, *e.g.*, bandwidth and storage capabilities. *See, e.g.,* Opening Br. 41-42; Reply Br. 8. Such limiting statements were made in earlier, concluded IPR proceedings that constitute prosecution history definitional and disclaimer statements. *See, e.g.,* Opening Br. 30-32; Reply Br. 5-6.

However, the panel erroneously rejected Bright Data's hardware-based constructions, instead affirming the PTAB's role-based constructions that "client device" means a "communication device that is operating in the role of a client" and "second server" means a "device that is operating in the role of a server"

8

and is "not the client device." Panel Op. 7-8.[2] Bright Data had explained that these constructions were erroneous because they neglected the critical hardware differences and prosecution history definitions and disclaimers, both in original prosecution and in IPR proceedings. *See, e.g.,* Opening Br. 26-32, 49-51; Reply Br. 5-6, 20-22, 27-28.

---

[2] It is undisputed that operating in the role of a client means sending requests and receiving responses, while operating in the role of a server means receiving requests and sending responses. These software definitions are applicable to conventional client ↔ server architecture. *See, e.g.,* Opening Br. 51-52.

## Argument

Bright Data submits that (1) the panel opinion conflicts with this Court's precedents by ignoring prosecution history statements in prior IPRs of two subject patents that disclaim the PTAB's broader role-based constructions and mandate adoption of Bright Data's narrower hardware-based constructions and (2) the panel erred in analyzing the prosecution history of the related ancestral patent and by ignoring other relevant limiting statements made during prosecution.

## A.    Contrary to Precedent, the Panel Overlooked Bright Data's Prosecution Disclaimers Including in Prior IPRs Limiting the Scope of the "Client Device" and "Server" Terms.

### 1.    In Prior IPRs, Bright Data Expressly Disclaimed a Role-Based Interpretation and Defined "Client Device" as Consumer Computer, a Type of Hardware That Differs from a Server.

The panel opinion contravenes the "basic principle of claim interpretation" that "prosecution disclaimer promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution." *Omega Eng'g, Inc. v. Raytek Corp.,* 334 F.3d 1314, 1324 (Fed. Cir. 2003). Specifically, the panel opinion ignores the well-established principle that prosecution disclaimers include statements during IPR proceedings:

> "A patent owner's preliminary response filed *prior* to an institution decision and a patent owner's response filed *after* institution are both official papers filed with the PTO and made available to the public. In both official papers, **the patent owner can define claim terms and otherwise make representations about claim scope to avoid prior art . . . .**"

10

*Aylus,* 856 F.3d at 1362 (italics original; emphasis added); *CUPP*, 53 F.4th at 1383 (finding that "disclaimer in an IPR proceeding is binding in later proceedings, whether before the PTO or in court"). "The purpose of consulting the prosecution history in construing a claim is to exclude any interpretation that was disclaimed during prosecution." *Phillips*, 415 F.3d at 1317 (internal citation omitted). As discussed below, the panel failed to follow this Court's precedents by not considering Bright Data's disclaimer regarding the "client device" and "server" terms in earlier IPRs, which is binding in later proceedings, including the appealed IPRs at issue.

In its briefing to the panel, Bright Data highlighted prosecution disclaimer including in two prior IPRs of the '319 and '510 Patents,[3] that were discretionarily denied institution before the appealed IPRs were even filed with the PTAB. Opening Br. 21, 30-32; Reply Br. 2, 5-6. Under settled legal principles, Bright Data's prior statements are binding in the later appealed IPRs. Bright Data unambiguously disclaimed the PTAB's role-based constructions by contrasting the client device and server terms based on hardware. Opening Br. 30-32; *Aylus,* 856 F.3d at 1362; *CUPP*, 53 F.4th at 1383.[4] The panel opinion contravenes those precedents.

---

[3] The cited statements from the prior IPRs were made before the '342 and '344 Patents issued.

[4] Appellees effectively conceded that Bright Data disclaimed any scope of "client device" beyond consumer computer hardware in the prior IPRs by failing to

In the IPR preliminary responses, Bright Data expressly stated that "client device" means "consumer computer." Opening Br. 31; *see also e.g.* Appx9453; Appx21992. In making narrowing statements in response to the IPR petition, Bright Data specifically cited to and adopted as lexicography the support in the common specification defining "client device" as "consumer computer." Appx9453; Appx21992; Appx1159 (2:44-46) ("In the network 50, files are stored on computers of consumers, **referred to herein as client devices** 60.") (emphasis added); *Kyocera Senco Indus. Tools, Inc. v. ITC*, 22 F.4th 1369, 1379 (Fed. Cir. 2022) (finding the patentee used the phrase "referred to herein as" to define a claim term).[5]

As its briefing to the panel further explained (Opening Br. 31), Bright Data expressly rejected a role-based interpretation of the claim terms in the preliminary response, including by referencing Appx9457.

> "[T]he 'plain and ordinary meanings' advanced by Petitioners are at complete odds with the express language of the claims. For example, Petitioners have advanced a theory that a 'client device' and a 'server'

---

respond to this argument. Opening Br. 30-32; Reply Br. 5-6. Bright Data never waived its disclaimer arguments. *See, e.g.,* Reply Br. 6, n.2 (first citing *Uniloc 2017 LLC v. Netflix, Inc.*, No. 21-2085, 2022 U.S. App. LEXIS 34595, *7 (Fed. Cir. 2022); then citing *Seabed Geosolutions (US) Inc. v. Magseis FF LLC*, 8 F.4th 1285, 1289 (Fed. Cir. 2021)); *see also, e.g., Roku, Inc. v. Universal Elecs., Inc.,* 2024 U.S. App. LEXIS 14723, *11 (Fed. Cir. 2024) ("Although the Board did not perform a prosecution disclaimer analysis . . . we may do so in the first instance on de novo review").

[5] Bright Data explained to the panel that client devices 60 and the claimed client devices are the same type of consumer computer hardware. Reply Br. 7.

refer only to the *role* that a device is currently performing…. []U]nder Petitioners' theory the [intermediary] client device would (presumably) switch between the role of 'client' (when requesting content) and 'server' (when responding to a request from another device). Patent Owner submits that any such interpretation of the claims would be nonsensical and 'unreasonable.'"

Appx9457 (italics original; citation omitted); *see also* Appx21994-21995. Even if these claim terms were capable of a role-based interpretation, Bright Data disclaimed the role-based interpretation.

Bright Data also made clear in its IPR preliminary responses that a client device is not a server and that a server is not a client device. Opening Br. 31; *See, also e.g.,* Appx9451-9453. Bright Data explained that the common specification distinguishes intermediary client devices from intermediary servers. *Id.*; Appx21985-21986.[6] These explanations further clarified that the claim terms refer to different types of hardware. The panel ignored the above disclaimers from Bright Data's prior IPR preliminary responses regarding "client device" and "server" conflicting with this Court's precedents.

---

[6] Bright Data also expressly stated in the prior IPR preliminary responses that none of the Crowds, Border, or MorphMix prior art references invalidate the claims of the '319 or '510 Patents. Opening Br. 31, n.25. These same references are at issue in the appealed IPRs. Contrary to the panel's findings (Panel Op. at 12), Bright Data expressly stated in the prior IPR preliminary responses that the "jondo 4" of Crowds is not a server and cannot correspond to the claimed "second server," and that Crowds does not disclose the unconventional architecture of the claims. Appx9467-9469; Appx21997; Appx22005-22008. None of the alleged prior art references solve the problems identified in the subject patents' common specification.

**2.    In Overlooking Bright Data's Clear Statements in the Prior IPRs, the Panel Failed to Follow This Court's Precedents.**

The panel's opinion erroneously failed to consider Bright Data's clear statements of disclaimer from prior IPRs, despite Bright Data directing the Court to these explicit statements and citing case law holding that these prior statements are binding in the later appealed IPRs. Opening Br. 30-32 and Reply Br. 5-6 (both citing, *e.g., Aylus,* 856 F.3d at 1362). In *Aylus,* this Court specifically held that a disclaimer made in an IPR preliminary response is binding on the patentee. *Aylus,* 856 F.3d at 1362. In *CUPP,* this Court further held that "disclaimer in an IPR proceeding is binding in later proceedings, whether before the PTO or in court." *CUPP,* 53 F.4th at 1383. In *Biogen,* this Court explained that courts must consider the prosecution history and in *Phillips,* this Court explained that courts must exclude any interpretation that was disclaimed during prosecution. *Biogen,* 713 F.3d at 1094; *Phillips,* 415 F.3d at 1317. Consequently, the panel contradicted multiple precedents related to prosecution history disclaimer in at least three instances.

First, the panel did not construe "client device" as "consumer computer" despite Bright Data's clear and unmistakable statements defining this claim term in the IPR preliminary responses. *Aylus,* 856 F.3d at 1362, and *CUPP,* 53 F.4th at 1383, require a different result.

Second, the panel affirmed the very role-based constructions that Bright Data disclaimed in the IPR preliminary responses. But this Court's precedent

14

requires rejecting any interpretation that was disclaimed during prosecution. *Phillips*, 415 F.3d at 1309. The role-based interpretation was disclaimed at least during the prior IPRs of the '319 and '510 Patents. This disclaimer is binding on the later, appealed IPRs.

Third, the panel affirmed constructions that do not make the vital distinction Bright Data expressly made in the prior IPRs: distinguishing intermediary client devices from intermediary servers.[7] But precedent requires that statements in the prosecution history, including statements made in a prior IPR, must be considered. *Aylus,* 856 F.3d at 1362 (holding that "[s]tatements made by a patent owner during an IPR proceeding, whether before or after an institution decision, can be considered for claim construction and relied upon to support a finding of prosecution disclaimer"); *Biogen,* 713 F.3d at 1094 ("[A] term's ordinary meaning must be considered in the context of all the intrinsic evidence, including the claims, specification, and prosecution history"). The panel violated this precedent by ignoring Bright Data's statements in the prior IPR preliminary responses. *See, e.g.,*

---

[7] Operating in the *role* of a client or server does not define a type of hardware. If the panel is relying on the HyperText Transfer Protocol (HTTP), these roles are **defined in software** where a client program makes requests and a server program sends responses to requests. *See, e.g.,* Opening Br. 5-8, 22, 43, 49-52; Reply Br. 2-3. In HTTP, an intermediary necessarily operates in both client/server roles. As further discussed below, the prosecution histories and common specification distinguish intermediary client *devices* (hardware) from prior art that used server hardware as intermediaries. *See, e.g.,* Opening Br. 6-8, 33-34, 40, 49-51; Reply Br. 9-11.

15

*VirnetX Inc. v. Mangrove Partners Master Fund, Ltd.,* 778 F. App'x 897, 910 (Fed. Cir. 2019) (in IPR proceedings, PTAB cannot ignore statements made in prior reexamination).

Because the panel failed to address Bright Data's prosecution history statements in the prior IPR preliminary responses, its opinion conflicts with this Court's precedents. Proper consideration of these prosecution history statements should compel the Court to adopt Bright Data's hardware-based constructions, where "client device" means "consumer computer" and "second server" means "server that is not a client device." Rehearing or rehearing *en banc* should be granted and these cases should be remanded to the PTAB for further consideration of the IPR challenges under the correct constructions.

**B.    The Panel Misapprehended the Prosecution History, Which Contradicts the PTAB's Constructions and Supports a Hardware-Based Distinction Between "Client Devices" and "Servers."**

**1.    Contrary to the Panel Opinion, Bright Data Distinguished Its "Client Device" from Garcia's "Server."**

Beyond Bright Data's disclaimer during the prior IPRs, the prosecution history further confirms that the claim terms "client device" and "server" refer to different types of hardware, and not to the role that hardware performs. For example, to overcome an Examiner rejection of the related ancestral '936 Patent,[8] Bright

---

[8] U.S. Patent No. 10,069,936.

Data distinguished that patent's intermediary "client device" from the prior art intermediary "server" described in the Garcia reference. Opening Br. 27-29; Reply Br. 20-21.

More specifically, the Examiner incorrectly equated the "cache ***server*** 306" (emphasis added) of Garcia with the intermediary "client" device of the then-pending '936 Patent claims. *E.g.*, Appx3420. Bright Data explained that Garcia did not disclose an intermediary client, it disclosed an intermediary "server." Further, Bright Data expressly stated that Garcia was "silent regarding . . . a ***non-server***" or "a ***client device*** as recited in the claim." Appx3413. And "there is a clear distinction in the art" between typical "client devices" and "server devices." Appx3410. The Examiner thereafter withdrew the rejection based on Garcia. *See* Appx3390-3391, Appx3362, Appx3356.[9]

The panel misapprehended this example from the prosecution history. In the panel's erroneous view, Bright Data attempted to distinguish the claimed "client devices" from Garcia's ***client*** device:

> [T]he applicant explained that while a ***client device*** in Garcia was 'typically consumer owned and operated,' this was not the case with the claimed invention's ***client devices***.

Panel Op. 10 (emphasis added). That analysis confused the cited prosecution

---

[9] The Examiner necessarily understood Bright Data's distinction based on hardware. In the next rejection, the Examiner relied on a client device of a different reference (Yu) instead of the server of Garcia. *See* Appx3390-3391.

history for two reasons.

First, as Bright Data explained to the Examiner, PTAB and panel, the relevant points of comparison are ***not*** between the client device of Garcia and the client device of the '936 Patent, but rather "that Garcia's intermediary ***server*** does not correspond to an intermediary ***client device.***" Opening Br. 28 (citing Appx3413-3414) (emphasis added). Garcia differed from the '936 Patent claims because Garcia uses "server" hardware as intermediaries, not "client device" hardware as intermediaries. Appx3413-3414; *see also* Appx3410 (contrasting "client devices" with "server devices"). The Examiner then withdrew the rejection based on Garcia.

Second, Bright Data ***did not*** distinguish Garcia's client device from the claimed client device as different types of hardware. Contrary to the panel opinion (at 10), Bright Data described the hardware for Garcia's client device, a conventional client device, and the claimed client device devices ***as all sharing certain attributes*** that differ from server hardware. *See* Appx3410 ("There is clear distinction in the art ***and*** as taught by the Garcia reference between clients and servers.") (emphasis added). After all, there was no need to distinguish Garcia's client device because Garcia uses "server" hardware as intermediaries, while the '936 Patent and Bright Data patents at issue instead use "client device" hardware as intermediaries.

These dispositive points show that, contrary to the panel's view of the prosecution history, Bright Data expressly distinguished the claimed client device from

18

Garcia's server, not Garcia's client device. In misperceiving Bright Data's statements in the prosecution history of the related ancestral '936 Patent, the panel erroneously accepted the PTAB's claim constructions. Correctly apprehended, Bright Data's prosecution history statements regarding Garcia require reversal under this Court's governing precedent.

### 2. The Panel Overlooked Prosecution History Statements Distinguishing Between "Client Device" and "Server" Hardware.

Given the importance of prosecution history, the panel had no basis to ignore all other examples that were briefed.

For example, the pre-issuance prosecution history of the subject patents also includes disclaiming statements regarding "client device" and "server." Opening Br. 29, 40; Appx3207-3208 (explaining during original prosecution of the '319 Patent that "the claims involve specific networking of physical elements such as servers and clients, connected via various networks forming a specific structure and relationships, which are physical apparatuses, and are NO[T] a 'generic computer' as stated in the Action…. the claims disclose a server receiving information from another server via a client device"). Further, the post-issuance prosecution history, specifically the prior IPRs of the '319 and '510 Patents discussed above, also unambiguously disclaimed the PTAB's role-based constructions and supported Bright Data's hardware-based constructions for the client device and server terms. Opening Br. 31; Appx9451-9452 and Appx21990 (explaining that "client device"

19

is not a server and that a "second server" is not a client device); Appx9453 and
Appx21992 (expressly stating "client device" means "consumer computer");
Appx9457 and Appx21994-21995 (expressly rejecting role-based constructions as
nonsensical in the context of the subject patents given that an intermediary would
be both a client and server).

Under governing legal principles, the relevant prosecution history— includ-
ing the prior IPRs of the subject patents—uniformly contradicts the PTAB's role-
based constructions and supports Bright Data's hardware-based constructions. Be-
cause the panel overlooked or disregarded that record, panel rehearing or rehearing
*en banc* should be granted.

## Conclusion

The Court should grant rehearing or rehearing *en banc* and hold that (1)
the prosecution history statements in prior IPRs disclaim the PTAB's broader
role-based constructions and mandate adoption of Bright Data's narrower hard-
ware-based constructions and (2) the prosecution history of the related '936 Pa-
tent supports Bright Data's narrower hardware-based constructions. Ultimately,
these consolidated appeals should be remanded to the PTAB for further consid-
eration of the IPR challenges under Bright Data's narrower hardware-based con-
structions.

*Respectfully submitted,*

Date: August 29, 2025

*/s/ Robert M. Harkins, Jr.*
ROBERT M HARKINS, JR.
CHERIAN LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704
(510) 944-0187
bobh@cherianllp.com

KORULA T. CHERIAN
CHERIAN LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704
(510) 944-0190
sunnyc@cherianllp.com

THOMAS M. DUNHAM
CHERIAN LLP
2001 L Street NW, Suite 650
Washington, DC 20036
(202) 838-1567
tomd@cherianllp.com

RONALD R. WIELKOPOLSKI
CHERIAN LLP
2001 L Street NW, Suite 650
Washington, DC 20036
(202) 838-1568
ronw@cherianllp.com

*Counsel for Appellant*

FORM 19. Certificate of Compliance with Type-Volume Limitations

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:**  23-2144, -2145, -2146, -2147, -2414, -2415, -2442, -2443

**Short Case Caption:**  Bright Data Ltd. v. Code200, UAB

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑  the filing has been prepared using a proportionally-spaced typeface and includes  3,869  words.

☐  the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐  the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 08/29/2025

Signature:  /s/ Robert M. Harkins, Jr.

Name:  Robert M. Harkins, Jr.

**Opinion**

NOTE: This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

_____

**BRIGHT DATA LTD.,**
*Appellant*

**v.**

**CODE200, UAB, TESO LT, UAB, METACLUSTER
LT, UAB, OXYSALES, UAB, THE DATA COMPANY
TECHNOLOGIES INC., MAJOR DATA UAB,
CORETECH LT, UAB,**
*Appellees*

_____

2023-2144, 2023-2145, 2023-2146, 2023-2147, 2023-2414,
2023-2415, 2023-2442, 2023-2443

_____

Appeals from the United States Patent and Trademark
Office, Patent Trial and Appeal Board in Nos. IPR2021-
01492, IPR2021-01493, IPR2022-00103, IPR2022-00135,
IPR2022-00138, IPR2022-00353, IPR2022-00861,
IPR2022-00862, IPR2022-00915, IPR2022-00916.

_____

Decided: August 1, 2025

_____

ROBERT M. HARKINS, JR., Cherian LLP, Berkeley, CA,
argued for appellant. Also represented by KORULA T.
CHERIAN; THOMAS M. DUNHAM, RONALD WIELKOPOLSKI,

Washington, DC.

DANIEL LEVENTHAL, Norton Rose Fulbright US LLP, Houston, TX, argued for all appellees. Appellees Code200, UAB, Teso LT, UAB, Metacluster LT, UAB, Oxysales, UAB, coretech lt, UAB also represented by STEPHANIE DEBROW, MARK T. GARRETT, Austin, TX; JONATHAN S. FRANKLIN, Washington, DC.

MICHAEL N. RADER, Wolf Greenfield & Sacks, PC, New York, NY, for appellee The Data Company Technologies Inc. Also represented by ADAM R. WICHMAN, Boston, MA.

JASON R. BARTLETT, Maschoff Brennan, San Francisco, CA, for appellee Major Data UAB. Also represented by WENSHENG MA.

_____

Before HUGHES, CUNNINGHAM, and STARK, *Circuit Judges*.

STARK, *Circuit Judge*.

Patent Owner Bright Data Ltd. ("Bright Data") appeals the decision of the Patent Trial and Appeal Board ("Board") in ten inter partes reviews ("IPRs"), finding the challenged claims of four of its patents unpatentable.[1] Bright Data argues that the Board erred in its constructions of two claim terms, its reading of prior art references, and its findings regarding secondary considerations of non-obviousness. We disagree and affirm the Board.

_____

[1] IPR2022-00861 and IPR2022-00862 were joined to IPR2021-01492 and IPR2021-01493, respectively, and then terminated. J.A. 39297, J.A. 46356.

I

The patents at issue – U.S. Patent Nos. 11,044,342; 10,257,319; 10,484,510; and 11,044,344 – are part of the same family.  They share a common specification.

Each of the four patents is directed to a "system designed for increasing network communication speed for users," by "releasing congestion from the Web by fetching [user requested] information from multiple sources, and relieving traffic from Web servers by offloading the data transfers from them to nearby peers."  J.A. 1137 ('342 pat. abstract).[2]  The claimed system includes "multiple communication devices," each of which may, at various times, "serve as a client, peer, or agent, depending upon requirements of the network."  J.A. 1160 ('342 pat. col. 4:44-50); *see also* J.A. 1163 ('342 pat. col. 9:20-25 ("separate [software] modules that run in parallel" are activated depending on "specific role that the communication device 200 is partaking in . . . at a given time").  The patents purport to reduce "infrastructure costs" faced by internet service providers by eliminating the need for proxy servers "at every point around the world where the Internet is being consumed."  J.A. 1159 ('342 pat. cols. 1:50-53, 2:26-29).

Figure 3, reproduced below, shows an embodiment in which several communication devices loaded with software switch functions, with each device serving at times as a client, peer, or agent.  J.A. 1160-61 ('342 pat. cols. 4:54-5:48).  When a communication device is designated as a client device, it requests information from the internet through a web browser.  J.A. 1161, 1163 ('342 pat. cols. 5:21-25, 9:27-

---

[2] We cite to the '342 patent, J.A. 1137-69, and the Board's final written decision in IPR2022-00103, which considered the '342 patent, J.A. 1-75.  The other patents and final written decisions are not materially different with respect to the issues presented in this appeal.

36. An agent recognizes that the identical information has been accessed recently from other communication devices, which each have portions of the requested data. J.A. 1163 ('342 pat. col. 9:44-50) (describing job of "agent[] [as] obtain[ing] a list of peers within the communication network 100 that contain requested information"). Those communication devices then are designated to work as peers and supply their respective portions of information to the agent. J.A. 1161 ('342 pat. col. 5:37-43).



J.A. 1146.

Claim 1 of the '342 patent is representative and recites:

A method for use with a web server that responds to Hypertext Transfer Protocol (HTTP) requests and stores a first content that is identified by a first Uniform Resource Locator (URL), the method by a first client device comprising:

[a] executing, by the **client device**, a web browser application or an email application;

[b] establishing a Transmission Control Protocol (TCP) connection with a **second server**;

[c] receiving, the first content from the web server over an Internet; and

[d] sending the received first content, to the second server over the established TCP connection, in response to the receiving of the first URL.

J.A. 1168 (emphasis added to show disputed limitations).

Several entities, including Code200 ("Petitioner"), petitioned for, and the Board instituted, IPRs. *E.g.*, J.A. 1-150. As part of its proceedings, the Board construed two disputed claim terms: "client device" and "second server." The parties' fundamental dispute with respect to both terms was whether they should be construed based on their function, as Petitioner contended was their plain and ordinary meaning, or if they should instead be more narrowly construed to require each have a different structure, as Bright Data preferred. J.A. 10-40. The Board rejected Bright Data's proposal and construed "client device" to mean "a 'communication device that is operating in the role of a client'" and "second server" to mean "a 'server that is not the client device.'" J.A. 38-39.[3]

---

[3] In doing so, the Board reached the same construction that a district court had reached when handling three suits involving Bright Data's patents. *See Bright Data v. Oxylabs f/k/a Teso LT, UAB et al.*, No. 2:19-cv-00395, ECF No. 191 (E.D. Tex. Dec. 7, 2020) (court disagreeing with Bright Data's hardware-based distinctions, instead finding specification teaches use of structurally identical "communication devices" that can serve in different roles at different times); *Bright Data v. Code200, UAB, et al.*, No. 2:19-cv-00396, ECF No. 97 (E.D. Tex. Feb. 8, 2021) (adhering to same constructions adopted in *Oxylabs*); *Bright Data v. NetNut Ltd.*, No. 2:21-cv-225, ECF No. 146 (E.D. Tex. May 10, 2022) (same); *see also* J.A. 2944-48, 2971-73, 3009-11, 6588-99.

Here, after resolving the parties' claim construction disputes, the Board analyzed Petitioner's prior art. Pertinent to this appeal is an article by Michael K. Reiter entitled "*Crowds: Anonymity for Web Transactions*," ACM TRANSACTIONS ON INFORMATION AND SYSTEM SECURITY, Vol. 1, No. 1, November 1998, at 66–92 ("Crowds"). J.A. 2391-417. Crowds proposes a system for web transactions allowing a user to join a crowd of users, "that collectively issues requests on behalf of its members," to protect users' anonymity. J.A. 2391. The Board found that Crowds both anticipated and rendered obvious the claims at issue on appeal.[4] In reaching its conclusion as to obviousness, the Board considered Bright Data's evidence of secondary considerations of non-obviousness. It found that Bright Data's evidence lacked probative value because Bright Data failed to demonstrate the requisite nexus between its evidence and its claims.

Bright Data timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## II

"The Board's claim constructions . . . are determinations of law reviewed de novo where based on intrinsic evidence, with any Board findings about facts extrinsic to the patent record reviewed for substantial-evidence support." *St. Jude Med., LLC v. Snyders Heart Valve LLC*, 977 F.3d 1232, 1238 (Fed. Cir. 2020). "Anticipation is a question of fact subject to substantial evidence review." *IOENGINE, LLC v. Ingenico Inc.*, 100 F.4th 1395, 1402 (Fed. Cir. 2024) (internal quotation marks omitted). "Substantial evidence

---

[4] On appeal, Bright Data limits its arguments to the independent claims of the challenged patents, all of which the Board determined were unpatentable based on Crowds. *See* Open. Br. at 3, 53-66; J.A. 73; J.A. 234; J.A. 407–08; J.A. 567; J.A. 710–11; J.A. 798–99; J.A. 1042; J.A. 1134.

is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). We "defer to the Board's findings concerning the credibility of expert witnesses." *Incept LLC v. Palette Life Scis.*, 77 F.4th 1366, 1377 (Fed. Cir. 2023).

"The ultimate question of obviousness is a legal question that we review de novo with underlying factual findings that we review for substantial evidence." *Roku, Inc. v. Universal Elecs., Inc.*, 63 F.4th 1319, 1324 (Fed. Cir. 2023). "What the prior art discloses and whether a person of ordinary skill would have been motivated to combine prior art references are both fact questions that we review for substantial evidence." *Intel Corp. v. PACT XPP Schweiz AG*, 61 F.4th 1373, 1378 (Fed. Cir. 2023). Findings relating to secondary considerations (i.e., objective indicia) of non-obviousness are reviewed for substantial evidence. *See Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1338-39 (Fed. Cir. 2008) (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966)).

## III

Bright Data challenges the Board's claim constructions, its understanding of Crowds, and its findings regarding secondary considerations of non-obviousness. We address each issue in turn.

## A

We agree with the Board's constructions of "client device" and "second server." As the Board explained, a person of ordinary skill in the art would understand that these terms, as used in Bright Data's patents, refer to the role a device is playing, and not to its particular structure (i.e.,

hardware).  Thus, the Board properly construed "client de-
vice" as a "communication device that is operating in the
role of a client."  J.A. 38.  It properly construed "second
server" as a "device that is operating in the role of a server"
and is "not the client device."  J.A. 38-39.

The Board rejected Bright Data's contention that the
disputed terms should be construed as hardware-based, in-
stead of role-based.  The specification explains that a com-
munication device has software that allows it to toggle
between roles as a client, peer, or agent.  *See, e.g.*, J.A. 1160
('342 pat. col. 4:41-50) ("software stored within each com-
munication device" allows each device to serve in different
roles "depending upon the requirements of the network").
The specification also expressly notes: "The acceleration
application 220 also contains three separate modules that
run in parallel, namely, a client module 224, a peer module
226, and an agent module 228, each of which comes into
play *according to the specific role that the communication
device 200 is partaking in the communication network 100
at a given time*."  J.A. 1163 ('342 pat. col. 9:20-25) (emphasis
added).  These statements provide strong support for a
role-based construction as opposed to a hardware-based
construction.

The Board was not persuaded by Bright Data's argu-
ment that role-based constructions would be unworkable
because they would somehow imply that the "first client
device" must operate as both a client and server.  *See* J.A.
31-32.  As the Board correctly explained, Bright Data's ar-
gument mistakenly presumes that the Board's construc-
tions require that a device "act exclusively in only one role
. . . at all times," which they do not.  J.A. 31.  We agree with
the Board on these points.

Bright Data's far narrower proposed constructions –
which would limit "client device" to a "consumer computer"
and "second server" to a commercial server – are not cor-
rect.  The only reference to "client device" that refers to a

"consumer computer" appears in a background example, which even Bright Data agrees discusses a prior art system and not the claimed system. *See* J.A. 1159 ('342 pat. col. 2:43-46). All subsequent references to "client device" throughout the specification use the term based on its role.

Bright Data argues that its construction is nonetheless correct because the patentee acted as its own lexicographer. We disagree.

As the Board concluded, the record here does not meet the high standard for lexicography. Lexicography involves "clearly set[ting] forth a definition of the disputed claim term" and "clearly express[ing] an intent to redefine the term." *Thorner v. Sony Comput. Ent. Am., LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (internal quotation marks omitted). The only support Bright Data cites for its purported lexicography defines not the "client devices" of its claims but, instead, the "client devices" of the prior art.

In the background portion of the specification, the patent states: "Fig. 2 is a schematic diagram providing an example of a peer-to-peer file transfer network 50. In the network 50, files are stored on computers of consumers, referred to herein as client devices 60." J.A. 1159 ('342 pat. col. 2:43-46). While it is true that terms like "referred to herein as" can be used to signal lexicography, *see, e.g.*, *Kyocera Senco Indus. Tools Inc. v. Int'l Trade Comm'n*, 22 F.4th 1369, 1378 (Fed. Cir. 2022); *Abbott Lab'ys v. Andrx Pharms., Inc.*, 473 F.3d 1196, 1210 (Fed. Cir. 2007), they do not always do so. It is necessary to examine precisely how the term is used and its place in the full context of the specification and in relation to the claims. Here, the language on which Bright Data relies provides a definition of, if anything, "client devices 60," not "client devices" generally and throughout the patent, including in the claims. The claims are not drawn to "client devices 60" but, instead, to "client devices," and this claim term is not defined in the patent. The passing reference in the background

section of the patent to "client devices 60" would not be read by a skilled artisan as carrying through to the claims but, rather, as limited to describing the prior art. *See* J.A. 33 (Board noting Bright Data's purported lexicographic declaration was used only in reference to describing prior art peer-to-peer file sharing system, not in reference to claimed invention). There is simply no "clear" definition or expression of intent to use "client devices" in the claims in the manner Bright Data argues.

Bright Data also directs us to the prosecution history, but it is no more helpful to it. Bright Data relies principally on statements made by the applicant to an examiner in prosecution of a great-grandfather patent to the '342. There, the applicant described the prior art as follows:

> Client devices, such as client 105 in the [prior art] Garcia reference, are end-units that request information from servers, use client-related software such as Web browser software, communicate over the Internet using ISP connection, and are typically consumer owned and operated . . . . In contrast, server devices are known in the art to be dedicated devices to store information objects, to be provided to clients upon request.

J.A. 3410.

In this statement, the applicant was distinguishing its invention from a prior art reference known as Garcia. In context, a person of ordinary skill in the art would understand the applicant to have been distinguishing its client devices and servers from Garcia's, not defining devices and servers more generally. Specifically, the applicant explained that while a client device in Garcia was "typically consumer owned and operated," this was not the case with the claimed invention's client devices. *See id.* (Applicant arguing "[t]he Garcia reference is silent, and [e]ffectively teaches away, from using clients as content source for other clients").

Thus, again, we agree with the Board's constructions and reject Bright Data's arguments to the contrary.

### B

Applying its constructions of the disputed terms, the Board held that Crowds either anticipates the appealed claims or, in combination with other references or alone, renders them obvious. Substantial evidence supports the Board's findings and, therefore, we agree that Petitioner proved the challenged claims are obvious.

Crowds teaches a system for web transactions allowing a user to join a crowd of users, to anonymize a search request. In Crowds, a request from a user is passed on to at least one random member of the crowd before being submitted to an end server. In this way, the request is anonymized. The anonymous users (shown as circled numbers in Figure 2 from Crowds, reproduced below) are known as "jondo's" (short for "John Doe's"). J.A. 2398-99.



The Board found that the first jondo will send a request to a second jondo to anonymize it; in the example above, jondo 5 sends a request to jondo 4. J.A. 44 (relying on annotated figure from Petitioner). Then the second jondo, jondo 4, will act as a second server passing along the

request to a client device, jondo 6, which passes it to a web server (shown as boxes in Figure 2). *See* J.A. 42. Jondo 6, the Board found, "is operating in the role of a client executing a web browser application because jondo 6 serves as a client of web server 5 when web requests originating at jondo 5 are sent by jondo 6 to web server 5 in the mapped path." J.A. 46. Thus, because jondo 6 acts as a client, Crowds teaches the claimed client device of the appealed claims. In reaching this conclusion, the Board relied on Crowds' disclosure as well as the declaration of Petitioner's expert, as it is free to do. J.A. 45 (citing Exhibits 1003 and 1004).

The Board also relied on Crowds' disclosure and Petitioner's expert to find that Crowds teaches a jondo acting as a second server. As the Board found, a person having ordinary skill in the art would understand that, in Crowds, the client device (jondo 6) establishes a TCP connection with the second server (jondo 4). *See* J.A. 46, 50. Because jondo 4 sends the "received jondo 5's web request on to jondo 6 and send[s] web server 5's response back to jondo 5," it "operates in the role of a server." J.A. 48.

In addressing Bright Data's arguments about the prior art, the Board recognized that "most of the[m] . . . are based on claim constructions that we have not adopted." J.A. 49. Bright Data does the same on appeal and it fares no better. *See, e.g.*, Open. Br. at 54 (arguing Crowds disclosure "indicates that servers are different from user computers"); *id.* at 58 (arguing another piece of prior art fails to teach appealed claims because its servers are "not different types of network components"). The Board's analysis in its final written decisions was consistent with the correctly construed claim language and was supported by substantial evidence.

## C

Substantial evidence also supports the Board's finding that Bright Data failed to introduce evidence of secondary

considerations of non-obviousness sufficient to overcome Petitioner's showing of obviousness.  The Board concluded that Bright Data's evidence did not satisfy the nexus requirement.  Its evidence of commercial success, for instance, reflects the marketplace success of "residential proxy service[s], residential consumer computers, and residential IP addresses," which are not limitations of any of the claims.  J.A. 62.  Because the features of the products it relies on to show commercial success are not claimed, Bright Data "failed to establish a nexus between the challenged claims and the products" relied on.  J.A. 61-63.  The product neither embodies nor is coextensive with the challenged claims.  J.A. 62.  The Board similarly rejected Bright Data's assertions of long-felt need, copying, and industry praise, again for lack of nexus.  J.A. 64-67.

The Board's findings are supported by the evidence it cited.  *See* J.A. 58-68.  The Board committed no error.

## IV

We have considered Bright Data's remaining arguments and find them unpersuasive.  Accordingly, for the foregoing reasons, we affirm the judgment of the Board.

**AFFIRMED**